1841.

Gilchrist
v.
Rea.

----

GILCHRIST, administrator, &c. *vs.* REA.

Upon an appeal from an order or decree of a surrogate, all the parties to the proceedings before the surrogate, who are interested in sustaining the order or decree appealed from, should be made parties to the petition of appeal.

Where a surrogate has made an order for the sale of a part of the real estate of the decedent, for the payment of the debts that were then ascertained, he is not authorized to make another order, to sell another portion of the estate to pay debts alleged to have been subsequently discovered, until the executor making the application has made out and filed an account of such new debts, and has complied with the other provisions of the statute, as on an original application.

An administrator who has no funds of the testator or intestate in his hands for the payment of debts is not authorized to pay alleged debts which are barred by the statute of limitations, and then to obtain an order for the sale of the real estate of the decedent to reimburse himself for the amount of the debts thus paid.

March 16.

THIS was an appeal from the decision of the surrogate of Washington county, refusing to confirm a sale of real estate made by administrators. Samuel Rea the elder, the father of the respondent, died in 1813 ; and by his will he authorized and empowered his executors to sell such part of his real estate as might be necessary to pay his debts, if his personal property should not be sufficient for that purpose. His executors having renounced the execution of the will, in November, 1813, administration with the will

annexed was granted, by the surrogate, to A. Gilchrist, the appellant, and J. W. Gillis. And in May, 1814, they filed an inventory, by which it appeared that the personal estate of the decedent was of the value of $846. About *eight* years afterwards, the administrators presented a petition to the surrogate for an order to sell the real estate to pay the debts, on the ground that the personal property was insufficient for that purpose. In the account then filed the aggregate of the debts of the testator, paid and unpaid, including the expenses of administration, were stated at $1145,72 ; of which debts there then remained unpaid $311. And the proceeds of the personal property were credited at $615 ; leaving a balance due to the administrators and to the creditors whose claims were then unpaid, of $530,71. In March, 1822, the surrogate made an order to sell a portion of the real estate, which was afterwards sold for $306,75. The administrators made a report of that sale, in March, 1823, stating in their report that there was still a deficiency of $275 ; and asked for a further order of sale. The surrogate confirmed the sale and ordered the administrators to convey to the purchaser. And on the same day he made another order to show cause on the 17th of May, why all the residue of the real estate should not be sold for the payment of the debts.

No further proceedings were had upon that order. But in 1825, the administrators presented a petition to the new surrogate stating the sale of the first piece of land, and that after expending all the personal property and the proceeds of that sale, there still remained a *large sum* due from the estate of the decedent, but without stating how much and without rendering any account of the debts then due and unpaid ; and asking for an order to show cause why all the real estate, or so much thereof as should be necessary to pay his debts, should not be sold. The order was granted accordingly ; and on the 19th of April, 1825, the administrators obtained a further order of the surrogate, which recited that $712,09 of the debts still remained unpaid, and directed them to sell seventy acres of the real

estate of the decedent, and that the proceeds of such sale should remain in the hands of amdinistrators as assets for the payment of debts and the costs and expenses of the proceedings.

Nearly eleven years after the making of that order, and long after the death of Gillis, one of the administrators, who died in 1828, the appellant in this cause, as the survivor, presented to the surrogate a report, stating that the administrator sold the premises mentioned in the order, to A. S. McDougall, in July, 1825, for the sum of $568,79 ; and asked for an order confirming such sale. The surrogate considering it proper that the owners of the premises should be heard upon that application, made an order that they should show cause before him, on the 8th of February, 1836, why the sale should not be confirmed and a deed given to the purchaser ; or why, in case such sale should be vacated, the surviving administrator should not be directed to re-sell the premises under the order of April 1825. The order to show cause having been served upon the respondent, one of the heirs of the testator and the occupant of the premises, he appeared before the surrogate with his counsel to oppose the application, and the appellant also appeared with his counsel, and moved for an order to confirm the sale. And the will of the decedent and the various petitions, returns, orders, and other proceedings on file or of record in the surrogate's office were given in evidence. The surrogate, after hearing the counsel for the parties, decided that the order of sale was unauthorized—1st. Because the will had charged the debts of the testator on the real estate, and had authorized his executors as trustees to sell so much of the estate as was necessary for the payment of debts ; and 2d. On account of the great lapse of time between the granting letters of administration and the application for the order to sell. He therefore discharged the order to show cause, and denied the application to confirm the sale. From this decision Gilchrist the surviving administrator appealed to the chancellor.

The following written opinion was delivered by the surrogate at the time of making the order appealed from :

J. WILLARD, surrogate. (After stating the facts in the case.) The question before me is, ought I to confirm this sale ? If the surrogate ought not to have entertained the application originally, the present surrogate should not confirm the sale. I ought not to be required to do that which I cannot help seeing should be reversed on the merits. I do not think that the order of sale made in April, 1825, precludes me from looking beyond it to see whether the surrogate had jurisdiction to grant it. I might not be required, or perhaps allowed, to go beyond it for a mere matter of form. There are two objections which I think are fatal to the surrogate's jurisdiction. *First.* The will contained a power of sale which in effect clothed the executors with power to sell all the real estate of the deceased to pay debts. They were thus created trustees, amenable only to the court of chancery, and entitled to the aid of that court only, if any was necessary, to consummate the sale. But none was necessary. They could sell without an order from any court. It was never contemplated that the surrogate should make an order for the sale of real estate when the executors had power to do so, given by the will. (*See R. L. of* 1813, *p.* 450.) By the existing law there is an express provision, on the subject, denying the power to the surrogate. (2 *R. S.* 102, § 14, *sub.* 2.) Though the executors renounced, it is presumed the administrators with the will annexed could execute the power. If they could not, it devolved on the court of chancery. (*See* 1 *R. S.* 734, § 100.)

*Secondly.* The lapse of time, between the granting of letters of administration with the will annexed and the application to the surrogate, being above nine years, in my judgment ousted the surrogate of jurisdiction. Although the statute is silent on this subject, until the revision of 1830, yet the legislature obviously did not intend in giving the power in question to the surrogate to make the

debts of the deceased a perpetual lien on the real estate in the hands of the heirs or devisees. Such a doctrine would eventually interfere with the sale of real estate in the hands of heirs or devisees, and be attended with monstrous oppression, especially in cases where infants are interested. The debts were all barred by the statute of limitations, long before the first application to sell was made. The present statute allows the act of limitations to be set up, in bar of claims against the estate, by any person interested in it ; and I entertain no doubt that the same principle existed at common law. (6 *John. Ch. R.* 360, 376. 1 *R. L.* 450, 453.) What other reason could be assigned why notice should be given to all persons interested in the estate, to shew cause why it should not be sold to pay debts, unless they might contest the validity of the debts as well as the just administration of the personal assets ? Chancellor Kent intimated an opinion in *Mooers* v. *White*, (6 *John. Ch. Rep.* 378,) that one year after the granting of letters was a sufficiently long time ; unless in special cases the surrogate, in the exercise of sound discretion, might see fit to allow a longer time. The revised statutes allow three years. No reason is shown why a delay of nine years was allowed in this case ; and it appears the heirs were infants and no guardian was appointed on the first sale. Chancellor Kent probably fixed too short a period ; but I am satisfied that nine years is altogether beyond a reasonable allowance. I am not calling in question the legality of the first sale. An innocent purchaser will stand in a different light from the administrators themselves. I do not vacate any order ; I merely refuse to make an order, the effect of which would be to enable the administrators to do a wrong, and thereby defeat the title of the heirs or devisees of the land. I do not deem it necessary to express an opinion on the other points, as I think the two above stated are conclusive against the application ; and they cannot be obviated. It is not for me to suggest the remedy of the surviving administrator or the purchaser. But if they have paid money by which the estate has been benefitted, they

can, doubtless, be relieved by a court of equity ; either by allowing the power in the will to be executed, or otherwise. There is, however, no remedy given by the act of 1819, or by the revised statutes. (2 *R. S.* 110, § 61.)   I shall deny the application for the reasons above stated.

*J. Crary,* for the appellant.

*C. L. Allen,* for the respondent.

THE CHANCELLOR.   The appeal in this case is irregular, as all the parties who are interested in sustaining the decision of the surrogate are not before me.   It appears by the transcript that Samuel Rea, the elder, left several heirs whose interest in the real estate sold by the administrators, in 1825, would be affected by the reversal of the order of the surrogate and a confirmation of the sale.   Although Samuel Rea, one of the heirs, alone appeared and contested the case before the surrogate, it does not appear that the other heirs had notice of the order to show cause. They cannot, therefore, be considered as assenting to the order to confirm the sale.   The appellant then should have made them parties, to his petition of appeal, as well as the respondent Samuel Rea, who has appeared and answered the same.   The practice on that subject and the proper course to be adopted to bring all the proper parties before this court on the appeal, and to put the case in readiness for a hearing in case of their neglect to answer the petition of appeal, will be found by a reference to the 118th rule of this court, and in the cases referred to in the notes to that rule.   But as the respondent who has appeared and answered did not raise that objection, I shall proceed to consider the case upon its merits, so far as his rights are concerned.

It is not necessary that I should express an opinion as to the objection that the surrogate could not make an order of sale where the will of the testator had charged all his real estate with the payment of his debts, by authorizing

his executors to sell so much thereof as might be necessary if the personal estate should be insufficient. That power in trust to the executors was probably an imperative power, which the court of chancery might have decreed the execution of, for the benefit of the creditors ; and which the court would not permit to fail for want of a trustee to execute the same. I am not prepared to say, however, that the existence of such a power, previous to the revised statutes, was wholly inconsistent with the right of the surrogate to make an order of sale, upon the application of the administrators with the will annexed, where the trustees of the power had renounced the trust. In the recent case of *Austin* v. *Conklin*, decided in the court for the correction of errors in December, 1840, I had occasion to examine the provisions of the revised statutes and of the former laws of this state in relation to the powers of administrators with the will annexed. From that examination I became pretty well satisfied that such a trust power could not be executed by the administrator *cum testamento annexo*, previous to the adoption of the revised statutes. And the supreme court had decided in that case that the revised statutes gave him no such authority. (*See Conklin* v. *Egerton's adm'r*, 21 *Wend. Rep.* 430. 25 *Idem*, 224.)

But I concur in opinion with the very learned and intelligent surrogate whose decision was appealed from, that the order of April, 1825, for the sale of the premises in question, was unauthorized, and that his successor was, on that ground, right in refusing to confirm the sale. That was not an order for a further sale to pay the balance of the original debts reported by the administrators when they applied for the first sale ; for the balance remaining due upon the first sale, according to their sworn report, was only $275. Even if the original order therefore was not absolutely void, as to which, I express no opinion, the administrators were not entitled to a new order to sell another portion of the estate to pay new debts, if there were any such which had been discovered since the filing of their report of the first sale, without first making out and filing

an account of such new debts, in the same manner as if it had been an original application. The order of March, 1823, to show cause why a further sale should not be made to pay the deficiency of $275, appears to have been abandoned. The petition which was presented two years after was, for every subsubstantial purpose, an original application. And it should have been accompanied by a proper account and inventory of the debts then existing, and the names of the persons to whom they were due, to authorize the surrogate to proceed, even if the right to institute such a proceeding had not been barred by lapse of time.

Again ; the administrators were required by the statute to make and file a statement of the debts, as far as they could discover the same, as soon as conveniently might be. And Chancellor Kent, in the case of *Mooers* v. *White*, (6 *John. Ch. Rep.* 360,) held that one year was a reasonable time for that purpose, unless special circumstances were shown to the surrogate to justify an application after that time. I will not say that in no conceivable case, under the former statute, the surrogate would be authorized to make an order where the administrators had neglected to make their application after the lapse of several years. But to justify the surrogate in making an order after such a lapse of time, the executors or administrators applying for the order must at least state in their petition that new debts, which were valid and subsisting claims against the estate, had recently been discovered. And if more than six years had elapsed they would also be bound to show that the debts were of such a nature that they were not barred by the statute of limitations. The administrators, in such a case, had no right to volunteer to pay debts which could not legally be enforced against them, or against the estate of the heirs at law, when the administrators had no assets in their hands. And if they did so, before the confirmation of the sale, and when they had no legal right to receive the purchase money, they did it in their own wrong and should themselves bear the loss.

74

The order appealed from must be affirmed with costs as to the respondent Samuel Rea, who is made a party to the petition of appeal and has answered the same. And as to every other person who had any interest in sustaining that order the appeal must be dismissed.