JANET WILKES and others, *appellants, vs.* JAMES HARPER, and others, *respondents.*

Co-legatees in no sense sustain to each other the relation of surety in respect to the testator's debts, each being liable only in proportion to the amount of his legacy.

One who pays a debt for which he is not personally bound, and which is not a charge upon his property, is not entitled to be subrogated to a lien which the creditor had upon the estate of the debtor.

Legatees, whose shares of the personal estate of the testator have been wasted by the executor, have no lien upon the real estate devised to such executor to make good their loss.

An executor, who was also a devisee and legatee, died insolvent, having wasted a large portion of the estate, and leaving unpaid a debt against the testator, and also a judgment against himself for a debt in no way connected with the estate, which judgment was a lien on his share as devisee in certain real estate of the testator. His co-devisees and legatees were his heirs at law, and as such took his share in the real estate; and having paid the whole debt against their testator, they filed their bill against the judgment creditor of the deceased executor, claiming to be substituted to the lien of the creditor whom they had paid, upon the executor's share in such real estate, and to restrain the sale thereof by the judgment creditor; also claiming a lien thereon in consequence of the *devastavit* of which the executor had been guilty. *Held,* that the bill could not be sustained.

APPEAL from chancery.   The appellants filed their bill in the court of chancery against the respondent, stating in substance as follows:

Charles Wilkes died in 1833, possessed of personal estate of

Wilkes *v.* Harper.

the value of about $280,000, and also of a very large real estate, a part of which consisted of the house and lot No. 28 Laight-street in the city of New-York. He left his widow, Jane Wilkes, and six children, George, Hamilton, Horatio, Anne, Charlotte, the wife of Lord Jeffrey of Edinburgh, and Frances, the wife of D. C. Colden, surviving him, and appointed his widow executrix, and his three sons executors of his will. By that will he bequeathed to his widow his house and lot No. 28 Laight-street for life, giving her the right to elect between that and another house and lot in the same street, he also gave to her the use of his furniture, plate, pictures, and carriages and horses for life. In addition to this, he gave to his executrix and executors $50,000 in trust to invest the same and pay over the interest thereof to his widow for life, with power to her to dispose of $30,000 of the capital thereof at her death by will, and the other $20,000 was then to sink into his residuary estate; and after giving $6000 in legacies to his nephews and niece, he disposed of the residue of his real and personal estate among his six children in equal shares; the sons to take their shares absolutely and directly, and the share of one of the daughters was vested in his executrix and executors, to sell the same and pay the proceeds to her or her representatives. The shares of the other two daughters he devised and bequeathed to other persons as trustees in trust to sell and convert the same into money, and to invest the proceeds in permanent securities for the separate use of those two daughters respectively for life; with power to the daughters to dispose of the same by will, and in default of such disposition, then he gave the same to the heirs or assigns of such daughters forever.

The widow and all the sons proved the will of the testator, and took out letters testamentary thereon, but they permitted Horatio Wilkes, one of their number, to have the principal control and management of the funds of the estate. Out of the funds which came to his hands he paid for debts due from, and moneys held in trust by, the testator, about $130,000, and he set apart and invested $50,000 for the legacy to the widow, in addition to the furniture, &c., specifically bequeathed to her. He

also paid the legacies to the nephews and niece of the testator. Portions of the real estate had also been sold, either by the devisees or by Horatio Wilkes, as their agent, to the amount of about $95,000; the proceeds of which sales, with the exception of $26,000, received by his brother Hamilton, came into his hands for convenience of distribution. He also received about $30,000 for the interest and income of the personal estate which had come to his hands as one of the executors, and for rents and profits of real estate which the devisees had suffered him to collect and receive, and for interest on the proceeds of real estate in his hands for distribution. Out of these proceeds of the real and personal estate, in December, 1838, Horatio Wilkes distributed between himself and his brother George, and the trustees of his three sisters, about $100,000, in equal proportions. Hamilton Wilkes retained in his hands the $26,000, on account of his share of his father's real and personal estate; leaving in the hands of Horatio Wilkes between $50,000 and $60,000 of the proceeds of the personal estate, and of the real estate that had been sold as a fund to pay the residue of the debts of the testator, and for future distribution among those who were entitled to the same. This sum, with the exception of $2,400, as the respondents alleged in their bill, Horatio Wilkes wasted or appropriated to his own use, previous to the recovery of the respondents' judgment against him, in January, 1837. He also wasted or appropriated to his own use about $27,000 of the trust fund, which he had previously set apart and invested for the legacy to his mother. In January, 1837, the respondents in this suit recovered a judgment against Horatio Wilkes and two other persons, in the superior court of the city of New-York, for $2,838, for a debt in no way connected with the estate of the testator; which judgment became a lien upon the legal title of Horatio Wilkes, in one-sixth of the remainder in fee of the house and lot, No. 28 Laight-street, devised to him by the will of his father. In March, 1840, Horatio Wilkes died unmarried and intestate, leaving his mother, his two brothers, and three sisters his only heirs at law. All his estate and property of every kind, with the exception of his interest in the Laight-

Wilkes v. Harper.

street lot, had, previous to that, been applied to the payment of his debts, leaving the judgment of the respondents in this suit and the debts due from him on account of his father's estate unpaid. At the time of his death there also remained due from the estate of the testator, to Fanny Garnett and Harriet Garnett, a debt of about $12,500 for moneys received in trust by the testator in his lifetime, and invested by him in his own name, which fund came to the hands of the acting executor, and was wasted by him previous to the recovery of the judgment of the respondents. In May, 1840, Hamilton Wilkes applied the $2400 of the proceeds of the estate of his father which had not been wasted by the acting executor, to the payment of a part of the debt of the Misses Garnett. And being advised that the surviving executor and the executrix, and the residuary legatees and devisees were liable to pay the balance of that debt, he paid it out of his own funds, upon his and their account, and with their assent. The respondents afterwards sued out a scire facias against one of the surviving judgment debtors, and against the assignee of the other who had been discharged under the bankrupt act, and against the brothers and sisters, and the mother of Horatio Wilkes, as his heirs at law, to revive their judgment, and have execution thereon against the estate upon which it was a lien. The appellants, the widow and surviving children of Charles Wilkes, with the husbands and trustees of the daughters, thereupon filed their bill, stating these facts, and also stating that other claims were made against the estate of Charles Wilkes, the validity of which, however, they did not admit, and claiming the right to have the residuary real estate which was devised to Horatio by the will of his father, applied to pay the balance due to them, and the amount which Hamilton Wilkes had paid for them to the Misses Garnett, and any other debts of the testator which they might be compelled to pay. They also prayed for an injunction to restrain the respondents from proceeding upon the scire facias to revive their judgment, or from commencing any other suit or proceeding to enforce the lien of their judgment against the interest which Horatio Wilkes had under the will of his father in the house

and lot No. 28 Laight-street. The injunction was issued accordingly, upon the certificate of one of the vice chancellors, acting as an injunction master. The chancellor, on the respondents' motion dissolved the injunction, on the ground that there was no equity in the bill. And the complainants appealed to this court.

*W. M. Evarts,* for the appellants. I. The bill claims an equitable lien in favor of the complainant, Hamilton Wilkes, upon the estate of Charles Wilkes, devised to Horatio Wilkes and of which Horatio died seized, on account of a debt of the testator, paid *in solido* by said Hamilton, and to which said Horatio's share of the testator's estate is bound to contribute ; and that such equitable lien is superior to the lien at law of the defendants' judgment. · (1.) The lands devised were liable to contribute ratably to the payment of this debt of the testator. (2 *R. S.* 369 *to* 372, §§ 26, 28 *to* 32, 36 *to* 48, 52, 53, 60.) (2.) The payment of this debt *in solido* by one of the devisees, entitles him to be subrogated to all the rights, remedies and liens which the creditor had, before such payment, upon or against the testator's estate in the hands of the other devisees, for their contributory share towards the payment of the testator's debt. (1 *Stor. Eq.* § 499 ; *Cuyler* v. *Ensworth,* 6 *Paige,* 32 ; *Eddy* v. *Traver, id.* 521 ; *Schermerhorn* v. *Barhydt,* 9 *id.* 28, 42, 43, 47 ; *Buchan* v. *Sumner,* 2 *Barb. Ch. Rep.* 165.) (3.) The rights and liens of such creditor of the testator, and therefore of such subrogated devisee, are paramount and superior to any lien which any individual creditor of any other devisee can obtain upon the devised estate in the possession of his debtor. (*In re Howe,* 1 *Paige,* 128 ; *Morris* v. *Mowatt,* 2 *id.* 586 ; *Kiersted* v. *Avery,* 4 *id.* 9 ; 2 *Stor. Eq.* § 1228 ; *Finch* v. *Earl of Winchelsea,* 1 *P. Wms.* 278 ; 4 *Kent's Com.* 154.) (4.) At the time of the payment by Hamilton Wilkes, the share of Horatio in the house in Laight-street had descended to his brothers and sisters, and they were liable in respect to that share, to make good to the creditors of Charles Wilkes, the contributory share of Horatio as the devisee of

Wilkes *v.* Harper.

Charles Wilkes, to the payment of such testator's debt. The payment by Hamilton was a payment by them all, and as it included Horatio's contributory share, they have an equitable lien upon his share of the testator's property for their indemnity. (5.) The payment by Hamilton Wilkes thus made after the death of Horatio, and with the knowledge and assent of his heirs and administrator, as including Horatio's contributory share, (if necessary to sustain the equity claims against Horatio's share of his father's estate,) entitles Hamilton Wilkes to be considered the equitable assignee of the Misses Garnett's claim. (6.) The complainant, Hamilton Wilkes, therefore, has an equitable lien to the amount of $2200, or thereabouts, with interest, upon Horatio's estate in remainder in one-sixth of the house in Laight-street, superior to the lien at law of the defendant's judgment.

II. The bill sets forth that Horatio Wilkes was the sole acting executor (though others qualified) of the estate of Charles Wilkes; that there were abundant assets of said estate in his hands to pay all the debts of the same; that Horatio was guilty of a devastavit before the recovery of the defendant's judgment; and upon an accounting made up between him and his father's estate, as of Jan. 1, 1840, he was found to be indebted to his father's estate in the sum of $59,112.26, upon such devastavit so committed prior to the recovery of the defendant's judgment. (1.) The co-devisees of Horatio, as against him are entitled to have the real estate which was devised to him by his father subjected to the payment of the debts of the estate of Charles Wilkes, before they shall be called upon to contribute, and they would have an equitable lien to that effect upon Horatio's share of his father's estate in his hands, or in the hands of his heirs or devisees. (2.) A judgment creditor's lien upon the property of his debtor is always subject to every superior equitable lien upon the same, whether latent or otherwise.

III. The co-devisees of Horatio have also an equitable lien upon their testator's estate in the hands of Horatio to make good the whole sum of $59,112.26 and interest from January 1, 1840, lost to them by reason of the devastavit of Horatio, and

if there were no debts of the estate of the testator to be provided for, the co-devisees of Horatio would have a better lien upon his estate derived from their testator, than any individual creditor of Horatio could have. (1.) Horatio will be deemed to have taken his full share of the testator's estate in the sum which he wasted, and any devised property found in his possession after the devastavit will be treated as a residuum of the testator's estate for distribution among the other devisees. (2.) The equitable claims of the creditors and co-devisees of Horatio were fixed anterior to the recovery of the defendant's judgment, and are therefore prior in time, as well as superior in equity.

*S. A. Foot*, for the respondents. I. The personal assets of Charles Wilkes, the testator, being not only sufficient, but vastly more than sufficient to pay all his debts ; and notwithstanding the large amount wasted by Horatio Wilkes, his son and acting executor, there yet remaining unwasted and actually applied to the payment of the testator's debts and distributed among his legatees, specific and residuary, sufficient to pay all his debts—and no creditor of the testator, after due proceedings before the proper surrogate's court, or at law, having been unable to collect his debt, or any part thereof, from the personal representatives of the testator, or from his next of kin or legatees—neither the appellants, nor any creditor of the testator, nor any person standing in the place of and having the rights of such creditor, has any claim, legal or equitable, on the real estate devised by the testator to his son, Horatio Wilkes. (2 *R. S.* 3d ed. 547, § 33 ; *id.* 550, § 60. *See also id.* 548, § 36 *Gere* v. *Clark*, 6 *Hill*, 350 ; *Butts* v. *Genung*, 5 *Paige*, 254 ; *Schermerhorn* v. *Barhydt, id.* 28.)

II. The debt or demand which the appellants had against Horatio Wilkes in his lifetime, and have since his death against his representatives, by reason of his wasting a large amount of the testator's estate, however legal and just, constitutes no equitable lien on his real estate, whether acquired by devise from the testator or otherwise, especially to the prejudice of the lien of the respondents by virtue of their judgment.

GARDINER, J. The complainants are the legatees and devisees of Charles Wilkes, the testator, and some of them the heirs at law of Horatio Wilkes, his executor, who died intestate. As legatees of Charles Wilkes they in no sense sustained to their co-legatee Horatio, or to each other, the relation of surety in respect to the debt of the Misses Garnett, or any other demand against the estate of their testator. According to the revised statutes, 452, section 28, " The whole amount which a creditor of the testator shall be entitled to recover, shall be apportioned among the legatees in proportion to the respective amounts of their several legacies, and such proportion only shall be recovered of each legatee." The judgment prescribed by the 30th section is to the same effect. Their liability as devisees in respect to the real estate was in like manner several, and limited by the estate, interest, or right devised to them by the testator. (2 *R. S.* § 32.) The complainants were therefore separately liable for their respective proportions, and the payment of Horatio's share by the other legatees, if at his request, would have been money advanced for *his* use ; and if voluntarily made without his assent, it would impose no obligation, either legal or equitable, upon him or his representatives.

The same remark is applicable to that portion of the estate of Charles Wilkes which came to the hands of Horatio as executor, either with or without the assent of the complainants, and which was wasted by him. In either case, Horatio would have become the debtor of his co-legatees or devisees respectively for their distributive shares of the testator's property. But this would give them no lien either at law or in equity upon the real estate devised to Horatio. We agree fully with the chancellor, that there was nothing in the nature of an equitable hypothecation by Horatio of his interest as devisee in the real estate of his father as a security for the faithful performance of his trust as executor.

It is urged by the counsel for the appellants, that at the time of the payment by Hamilton Wilkes of the Garnett debt, as stated in the bill, the share of Horatio in the house in Laight-street had descended to his brothers and sisters, and they were

liable in respect to that share to make good to the creditors of Charles Wilkes the contributory share of Horatio as devisee of Charles Wilkes to the payment of his debt; that the payment by Hamilton was a payment by them all; and as it included Horatio's contributory share, they had an equitable lien upon his share of the testator's property for their indemnity. The complainants, it must be remembered, are the widow and surviving children of Charles Wilkes, and the husbands and trustees of the daughters. The bill states that the Garnetts demanded payment of their debt from *the estate* of *Charles Wilkes.* It alleges that they were advised that they were liable in respect of any *estate* or *moneys* received from *Charles Wilkes;* not in respect of the estate which descended to a part of them from one of his devisees. And being so advised, Hamilton Wilkes *thereupon* paid the debt with his own money, under an agreement with *all* the complainants that it should be considered a payment in behalf of the estate of *Charles Wilkes.* They then insist that Hamilton Wilkes ought to be subrogated to the right of the Garnetts to the extent of $2,200, the contributory share of Horatio, and that the former has a lien for that amount paramount to the personal creditors of the latter. The payment was therefore on account of the presumed liability of the complainants as legatees and devisees of Charles Wilkes; and their promise of repayment was in the same character. Hence the claim that Hamilton should be substituted in place of the Garnetts, and paid the contributory share of Horatio, is in behalf of *all* the complainants as legatees and devisees of Charles, and not in behalf of the heirs of Horatio Wilkes. The whole frame of the bill is therefore inconsistent with the idea now suggested for the first time, that the money was advanced to the Garnetts by Hamilton, at the request of his co-heirs in respect to his and their liability as the heirs of their brother.

And, in the second place, the complainants who were heirs at law of Horatio Wilkes, were in that character liable for all his debts to the extent of the real estate inherited by them. (2 *R. S.* 452, § 32.) In order to retain the property they were

bound to pay both the contributory share of Horatio for the Garnett debt, and the judgment of the defendants.

The bill is silent as to the value of Horatio's interest in the Laight-street property. For aught we can say, it may have been sufficient to discharge both demands. The most that the heirs of Horatio can claim is, that they have paid a debt of their ancestor which was preferred to that of the appellees by the equity of the statute. (2 R. S. 455, § 48.)

But if the residue of the real estate, after deducting the contributory share of Horatio to the Garnett debt, was sufficient to pay the judgment of the appellees or any part of it, they ought not to have been restrained by injunction from obtaining satisfaction pro tanto.

The decree of the chancellor must be affirmed.

Decree affirmed.