## SUPREME COURT.

EDWIN R. BALL and another, administrators, with the will annexed, of, &c., ELIZABETH CASEY, deceased, agt. JOHN M. MILLER, administrator of, &c., BENJAMIN WILKINSON, deceased.

A final accounting before the surrogate upon the application of an administrator, and a decree of the surrogate thereon declaring a balance due the administrator from the estate, is conclusive evidence of the facts stated therein.

But where such a debt against the estate is established in favor of the administrator, it cannot be paid out of the proceeds of the *real estate* of the intestate. The debts which are to be satisfied out of the intestate's (or testator's) real estate are debts of the *decedent* himself, and not those which arise against his estate subsequent to his death, and in the course of administration. The provisions of the statute limit the authority to sell the real estate to the case where the debts existed against the decedent in his lifetime.

Where, however, the debt of the administrator thus established before the surrogate, or any part of it, is caused by the application of the moneys of the estate to the payment of debts existing against the intestate in his lifetime, the administrator may be regarded as the *equitable assignee* of those claims, and to be subrogated to the rights of those creditors, and entitled to satisfy such claims out of the proceeds of the real estate in the same manner as the original creditors.

But such a debt of the administrator must be regarded as a simple contract debt, and to be prosecuted within six years, to save it from the statute of limitations. Because, the statute (2 *R. S.* 293, *4th ed.*) provides that the *debt* for which such judgment or decree was obtained shall, notwithstanding the form of such judgment or decree, *remain a debt* against the estate of the deceased, to the same extent as before, and to be *established in the same manner as if no such judgment or decree had been obtained.*

*Albany General Term, December,* 1858.

*Present,* WRIGHT, GOULD *and* HOGEBOOM, *Justices.*

THIS is an appeal by the plaintiffs, from the decree of the surrogate of Rensselaer county, refusing to allow the plaintiffs to participate in the distribution of moneys arising from the sale, under a surrogate's order, of the real estate of Joseph P. Casey, deceased, and awarding the same entirely to the defendant. No question arose in the case before the surrogate, ex-

cept as to the point whether the plaintiffs' claim was of that character that entitled them to participate in the proceeds of sale. The plaintiffs' testatrix had been administratrix of the estate of her husband, Joseph P. Casey, deceased, who died in 1839. On the 17th of August of that year, she was appointed such administratrix. She subsequently applied for a final settlement of her accounts as such administratrix, and thereupon such proceedings were had, that on the 20th of March, 1849, the surrogate of Rensselaer made a decree (so called) or settlement of her accounts, by which it appeared, among other things, that there was a " balance due the administratrix from the estate, of $832.41." And the surrogate, after stating in his decree the previous proceedings, and the several amounts in a general form for which she was to be debited and credited, closed his decree as follows : " And it is further ordered and decreed, that the said administratrix pay to me, said surrogate, for my fees in this matter, the sum of $14.00, which will leave a balance of $832.41 due the said administratrix, from the estate of said deceased." There was in the decree no other order for the payment of the money, and no particular statement of the source from which this balance was derived, but it appeared from the proceedings, that after charging the administratrix with the original amount of the estate, and crediting her with disbursements for debts of the estate, commissions and expenses, interest on disbursements, and depreciated and uncollectable assets and surrogate's fees, the balance due to her from the estate was as above stated. Mrs. Casey died in May, 1854, and in July, 1854, the appellants were appointed her administrators, with the will annexed. Subsequently, and in October, 1854, Edwin R. Ball, one of her administrators, was appointed administrator *de bonis non*, of her late husband Joseph P. Casey, deceased. On the 12th day of October, 1855, the respondent recovered judgment against Edwin R. Ball, as administrator of Joseph P. Casey, deceased, and Abraham P. Holdridge, as executor of Jacob Wager, deceased, for $1,503.54, Casey and Wager having been sureties on an indemnity bond given to the sheriff or a deputy sheriff of Rensselaer, for prop-

erty levied on by him under execution.  Upon this judgment the respondent applied for and obtained an order from the surrogate, to sell the real estate of Joseph P. Casey, deceased, for the payment of his debts.  It was accordingly sold, pursuant to such order, and upon the moneys being brought into the surrogate's office for distribution, the respondent and appellants appeared as rival claimants thereof, when the surrogate made the decree above stated, from which the plaintiffs appealed to this court.

CLARENCE BUEL, *for appellants.*
D. L. SEYMOUR, *for respondent.*

By the court—HOGEBOOM, Justice.  The respondent makes various objections to the plaintiffs' claim, upon either of which he insists that the decree of the surrogate rejecting the same ought to be affirmed.  1st. It is alleged that the claim in question never was a *valid and subsisting* demand, in any proper sense of the term.  2d. That it never was such a demand *against the estate* of the intestate, and must possess that character in order to be entitled to share in the proceeds of the real estate.  3d. That if it ever had any legal validity, it became barred by the statute of limitations, and has not been in any way revived by payments upon the same.

1. The character of the plaintiff's claim, and its validity and effect, must be determined by a reference to the statutory provisions upon that subject.  This was a final accounting upon the application of the administratrix, all persons interested as creditors and next of kin are required to be made parties thereto (2 *R. S.* 279, 4th ed.); they must be presumed to have been so, the proceeding is of no validity against them, unless they were.  In this view, the respondent or his intestate is presumed to have been cited to attend such accounting, and in that event, it would be conclusive upon him to the extent fixed by the statute.  It does not expressly appear, whether the respondent was a party to such accounting, perhaps the question is not material, as no objection is made to the accounting

for that reason, but is based solely upon its intrinsic character and effect. By the statute, the final settlement of such account and the allowance thereof by the surrogate is conclusive as to the amount and value of the assets embraced therein, and as to the disbursements and expenses charged therein; no doubt, if additional assets subsequently came into the hands of the administratrix, or if any were by accident or design omitted from the account, the administratrix in a subsequent proceeding would be chargeable therewith. But no such fact appears. I think we must, therefore, assume that this account as settled by the surrogate, whether we call it an account or a decree, or give it some other name, is conclusive evidence of the facts stated therein. It establishes the fact that the administratrix had overpaid to the amount of $832.41, in other words, that the estate was her debtor to that amount.

2. It being thus established as a debt, is it a debt to be paid out of the proceeds of the real estate? By section 1 (2 *R. S.* 285, *4th ed.*), administrators may apply for an order to sell so much of the real estate of the intestate as shall be necessary " to pay his debts." The petition shall set forth such debts. (*Section* 2.) The debts against the testator or intestate may be contested on the hearing of the application. (*Section* 13.) The surrogate is to enter in a book the demands which upon such hearing he shall adjudge valid and subsisting *against the estate* of the deceased (*section* 16), and is to make no order of sale, unless satisfied that the debts, for the purpose of satisfying which the application is made, are justly due and owing, that the personal estate is insufficient for that purpose, and that the whole of the personal estate applicable to the payment of the *debts of the deceased* has been duly applied for that purpose. (*Section* 17.) The proceeds of the sale having been paid into the surrogate's office, he is first to satisfy thereout the charges and expenses of the sale; next, the widow's claim of dower; and " if, after the deductions aforesaid, from the proceeds of such sale, there shall not be sufficient remaining to pay all the *debts of the testator or intestate*, then the balance of such proceeds shall be divided by the surrogate among the

Ball agt. Miller.

creditors, in proportion to their respective debts, without giving any preference to bonds or other specialties, or to any demands on account of any suit being brought thereon." (*Section* 47, 2 *R. S.* 292, 4*th ed.*) Before making the distribution, notice is to be published, and parties having debts are to have a further opportunity to establish the same, and the surrogate is to ascertain the valid and subsisting debts against the *testator or intestate.* (*Section* 50.) If the administrator does not move in the matter, he may be set in motion on the application of a creditor, and if he still refuses, a disinterested freeholder may be appointed to act in his place, to accomplish the purposes of the act. (*Sections* 59 *to* 63, 2 *R. S.* 293, 294.) The effect of these various provisions seems to me to be, to limit the authority to sell the real estate to the case where the debts existed against the decedent in his lifetime. There are expenditures necessary to be incurred after the death, such as funeral expenses, and expenses of administration, which are properly payable out of the assets of the estate. But the real estate is not the primary fund for the payment of debts. The personal estate is presumed to be, and generally is, ample for that purpose, and it is a salutary protection against improvident expenditures, in the course of the administration of an estate, that claims of this character should not be chargeable on the real estate. The personal representative, having the personal assets in his hands and knowing their amount, can always guard against a loss to himself, arising from such a quarter, and there seems no necessity for straining the language of the statute, to give it the construction contended for by the counsel for the appellants. The fair and natural reading of it is otherwise, and this in connection with the other considerations to which I have alluded lead my mind to the conclusion that the debts which are to be satisfied out of the testator's real estate are debts of the decedent himself, and not those which arise against his estate, subsequent to his death and in the course of administration.

But this view of the case is not necessarily destructive of the plaintiffs' entire claim, and, perhaps, not of any part of it.

So far as the excess in Mrs. Casey's expenditures as adminis-
tratrix, over her receipts, is caused by the application of the
moneys of the estate to the payment of debts existing against
the intestate in his lifetime, I think she ought to be regarded
as the equitable assignee of those claims, and to be subrogated
to the rights of those creditors. This is a familiar principle in
equity jurisprudence, and the surrogate's court partakes
strongly of the characteristics of an equity tribunal. In
equity, the payment of a claim does not always and necessarily
extinguish it, but it is deemed merged, extinguished and sat-
isfied or kept alive, according as equity and justice require.
In this case, there was no obligation on the part of the admin-
istratrix to make payments beyond the personal assets in her
hands, and, if she made them, it must be deemed to have been
done for the convenience of the creditor or for the benefit of
the estate, and not to her own prejudice. To the extent that
she has applied her own moneys or those of the estate upon the
claims of creditors of the deceased, I think she must be re-
garded as the equitable assignee of those demands, and enti-
tled to satisfy them out of the proceeds of the real estate in the
same manner as the original creditors, and such, I think, is the
fair effect of the authorities. (*Livingston* agt. *Newkirk*, 3 *J. C.
R.* 312, 318 ; *Evertson* agt. *Tappen*, 5 *J. C. R.* 497, 514 ; *Gil-
christ* agt. *Rea*, 9 *Paige*, 66, 73 ; *Collinson* agt. *Owens*, 6 *Gill
& John.* 4.) I am unable, from the papers before us, to ascer-
tain how much of the plaintiff's claim would be protected by
the application of this rule, and, therefore, unless the whole
demand is extinguished by the operation of the statute of limit-
ations, which I shall presently consider, I am of opinion
that the surrogate's decree should be reversed, and the proceed-
ings remitted to him, with instructions to allow so much of
the plaintiff's claim (not exceeding the balance declared in
her favor) as accrued from the payment of valid and subsist-
ing demands against the decedent in his lifetime.

3. The remaining question is, whether the plaintiff's de-
mand is barred by the statute of limitations? The respondent
claims that it is, that at best it is to be treated as a simple con-

tract debt, and so, should have been prosecuted within six years after it accrued; that it acquired no higher dignity by the adjudication of the surrogate, and could not under the provisions of the Revised Statutes; that the surrogate's statement or settlement of the accounts of the administratrix had neither the nature, the form nor the essence of a final decree, nor, indeed, of a decree of any description.   On the other hand, the appellants' counsel claims that it had all the characteristics and attributes of a final decree, was intended as, and was actually such, and, being such, was valid and operative for a period of twenty years, and that if the appellants' demand possessed merely the character of a simple contract debt, it was, nevertheless, not barred by the statute of limitations, there being no person in existence, at least not till October, 1855, against whom it could be prosecuted or enforced, and that it was also preserved from the operation of the statute of limitations by payments made upon the same.

In order to test the character of this claim, we must look at the facts already established.   Mrs. Casey was the equitable assignee of the demands of certain creditors of Joseph P. Casey, deceased.   Those must be presumed to have been simple contract debts, there is no evidence that they possessed a higher character.   We are not referred to their dates, and are not able to say whether, in their original form, they had or had not become barred by the statute of limitations, during the ten years which elapsed from the time Mrs. Casey took out letters upon the estate of her husband, in 1839, to the time of the surrogate's decree on final accounting, in 1849.   Be that as it may, in 1849, we find her the representative of her husband's estate, having exhausted the personal assets, in possession of a demand against his estate, liquidated by the surrogate at $832.41, and entitled to payment therefor or some part thereof out of the real estate of the deceased.   What was there from that moment to prevent her from seeking satisfaction for that demand in a competent tribunal?   It is said that she could not proceed as administratrix to obtain an order of sale from the surrogate, because the three years had expired from the

Ball agt. Miller.

date of her letters within which the application must be made. But is it clear that, if she was, as I have endeavored to show, the equitable assignee of the demands paid by her, she could not apply to the surrogate *in that character*, like any other creditor, for an order to sell the real estate? If so, there would be no obstacle to her immediate action. But, suppose this not to be so, could she not file a bill in equity, setting forth all the facts for a sale of the real estate, making the heirs of her husband parties defendant thereto? My impression is that she could. At all events, I see no reason why she could not have immediately prosecuted the heirs under the statutory provisions in regard to suits against heirs and devisees. (2 *R. S.* 694, *4th ed.*) She could also have assigned her demand, covered by the surrogate's decree, to a third person, and that person have prosecuted the demand with effect. My impression therefore, is, that in one or more of the above forms, or in some other proceeding, her right of action was perfect from the time of the entry of the surrogate's decree. If her demand, then, is to be treated as a simple contract debt, the time which was allowed to elapse, from 1849 to 1858, is fatal to its existence or continued validity. It becomes, therefore, essential to inquire whether, in reference to the proceedings of 1858 in the surrogate's court, for the sale of the real estate, it derived any additional validity, higher character, and more enduring existence, from the operation of the surrogate's order or decree of the 20th of March, 1849. By this adjudication, it doubtless acquired all the attributes of a *stated account*, and it had, as is apparent from several provisions of the statute, several of the elements of a final decree. I think it could be sued on as such, and if it could be regarded as a judgment or decree in her favor in her individual capacity against herself, as the representative of her husband's estate (which is the most favorable light for her in which we can be permitted to regard it), I think it would be available for the purposes of prosecution for the period of twenty years from the time of the decree.

But it is a very different question whether it had a twenty years' duration as *against the real estate*, or the parties repre-

senting the real estate.    It must be recollected that giving this
stated account the force of a judgment, it is not a judgment
against *Joseph P. Casey*, nor *against the real estate* now sought
to be made liable to pay it, nor against the *owners* of that real
estate.    In the same way the respondent's *judgment* is not a
judgment against the *decedent*, nor his *real estate*, nor the *parties*
representing it.    Hence it is, that the statute (2 *R. S.* 293,
4*th ed.*) has wisely provided that " where a judgment has been
recovered or decree obtained against an executor or adminis-
trator for any debt due from the deceased, and there are not
sufficient assets in the hands of such executor or administrator
to satisfy the same, the *debt* for which the judgment or decree
was obtained shall, notwithstanding the form of such judg-
ment or decree, *remain* a debt against the estate of the de-
ceased *to the same extent* as before, and to be *established in the
same manner as if no such judgment or decree had been obtained.*
Provided, that where such judgment or decree has been ob-
tained upon a trial or hearing upon the merits, the same shall
be *prima facie* evidence of such debt, before the surrogate."
(*Laws of* 1837, *ch.* 460, § 72; 1842, *ch.* 172; 1847, *ch.* 298.)
The object of this statute was, I think, twofold.    1st. To pre-
vent the original claim from losing its character as a debt
against the *real* and personal estate of the deceased, by having
become a *personal judgment* against the executor or adminis-
trator.    And, 2d.  To prevent it from acquiring the *conclusive*
character and the *durable* existence of a judgment or decree as
against the *real estate* or the *heirs* who represented it, and had
not as yet had an opportunity of being heard in opposition to
the claim.    (*See Ferguson* agt. *Browne,* 1*st Bradf. R.* 16; *War-
ren* agt. *Paff,* 4 *id.* 260.) It becomes unnecessary, in this aspect
of the case, to consider the question whether surrogates' de-
crees have a duration of *six* or *twenty* years, before they are
barred by the statute of limitations.    For the purposes of this
proceeding, the statement, order, judgment or decree, whatever
it may be, has no more force or vitality than if it existed in its
original shape, as a simple contract debt against Joseph P.
Casey.

Has it been revived or kept alive by payments? The evidence upon this subject is exceedingly loose and unsatisfactory. It does not appear that the parties well understood the purpose for which the money was demanded, nor that it was intended to be applied upon this specific claim, nor that its object was to give efficacy to a debt already extinguished by the statute of limitations. Moreover, it was not a payment made by the respondent or other *creditors*, but by the *heirs*, and at most by only two of them. The evidence was objected to before the surrogate, and it does not appear what disposition he made of the question of fact arising thereon. We may well infer that he came to the conclusion that it was not understood or designed as a payment upon this specific demand, nor, in my opinion, ought *heirs* to be thus permitted to re-establish and re-suscitate a demand, already dormant and dead by the operation of the statute, to the prejudice of a *creditor*, whose demand exhausts the entire fund. Under these circumstances, I think the alleged payments must be laid out of view, and not permitted to interfere with the direction which the cause would otherwise take.

The decision of the surrogate should be affirmed with costs.