KEATOR ET AL., PLAINTIFFS IN ERROR, v. THE COLO-
RADO COAL AND IRON DEVELOPMENT COMPANY, DE-
FENDANT IN ERROR.

1. STIPULATION—PRACTICE.

The agreed statement upon which the cause was submitted contained
a copy of a contract which lacked sundry indorsements on the orig-
inal. It was agreed that " when said contract is obtained, any and
all indorsements, writings, figures, etc., thereon, shall be copied on
the back of Exhibit A and become a part thereof." When the orig-
inal was produced there appeared on its face the words, " Canceled
by substitution of deed to property," and the defendants asked leave
to so change what purported to be a copy as to make it conform to
the original. Held, leave should have been granted.

2. MERGER OF EXECUTORY CONTRACT.

An executory agreement for the sale of land is annulled and abrogated
by the delivery and acceptance of a deed in pursuance thereof. It
can no longer be resorted to for the purpose of ascertaining the
terms on which the land was sold, unless it is shown by otherwise
competent testimony that something remained to be done after the
transfer of the title.

3. TAXES, AS BETWEEN GRANTOR AND GRANTEE.

The statute provides that as to all lands conveyed between the first day
of January and the first day of May, the grantee must, in the ab-
sence of express agreement, pay the taxes which stand assessed
against the property. A payment of such taxes by the grantor,
under such circumstances, gives no right of action against the
grantee.

*Error to the County Court of Pueblo County.*

Mr. D. McCASKILL and Mr. J. E. RIZER, for plaintiffs in
error.

No appearance for defendant in error.

BISSELL, J., delivered the opinion of the court.

If the evidence produced on the trial were conceded to be
admissible it would not support the judgment entered. The

action was brought by the Colorado Coal & Iron Company against the plaintiffs in error, Keator, Barclay and Townsend, to recover $64.12 which the company had paid as taxes on certain lots in Pueblo, which had been sold to those parties prior to the payment and the suit. When the cause was tried in the justice's court, it was submitted on an agreed statement of facts under a stipulation that the statement should be all of the evidence used during that or any succeeding trial of the case. A copy of the original agreement of sale was incorporated into the stipulation, under a proviso that it might be changed to conform to the original when that should be produced. To render the decision and the controversy intelligible the agreed statement of facts must be summarized, though much of it would have been inadmissible as evidence had it been objected to in a proper and timely manner. From this statement it appears that in July, 1889, the company contracted to sell to Keator and his codefendants three lots in the town of Pueblo. The consideration was $1,435, represented by certain promissory notes payable at fixed dates, and " the further payment of all taxes hereafter levied on said premises." The company agreed, on the payment of the expressed consideration, to execute a deed for the premises. It is recited that on the 9th of October, 1889, taxes to the extent of $64.12 were levied by the proper authorities. On the 15th day of February, 1890, the company delivered to the defendants their warranty deed for the property bearing date the 10th of February, and put them in possession. After this transfer of title and delivery of possession, on the 28th of February The Coal and Iron Company paid to the proper county treasurer the taxes which had been levied and assessed against the property. At the time these taxes were paid the company made no demand or request that the defendants should pay them, nor did they call on the defendants to pay at any time prior to suit. The copy of the contract, which was a part of the stipulation, lacked sundry indorsements which were on the original, and the parties agreed that " whereas the defendants claim that

there are certain indorsements or writing and figures on the back of the duplicate contract surrendered to plaintiff which is in New York, when said duplicate contract is obtained, any and all indorsements, writings, figures, etc., thereon, shall be copied on the back of Exhibit A and become part thereof," etc. * * * When the original was produced at the trial there appeared on the face of it these words :—" Canceled by substitution of deed to property ; " and the defendants asked leave to so change what purported to be a copy as to make it a duplicate according to the spirit, if not the tenor, of the stipulation.   This privilege was refused apparently on the hypothesis that the stipulation only applied to the indorsements on the back of the instrument.   The county court affirmed the judgment which had been rendered by the justice, and held that the defendants were bound to pay the taxes which the company had settled with the treasurer.

On very plain and well settled principles this judgment must be adjudged erroneous.   In view of another trial the questions raised and argued by counsel will be determined, though a decision of one proposition might suffice to reverse the case.

The defendants ought to have been permitted to change the instrument attached to the stipulation, so that the contract set out should, in all of its particulars, recitals and indorsements, conform precisely with the original on which alone the case ought to have been heard and tried.   It is quite possible that a very narrow, strict and technical construction of the stipulation might suggest that the purpose of counsel was to permit only the addition of what might appear on the back of the original contract.   Such is not a proper or an accurate interpretation of the language of the stipulation.   The concluding phraseology provides that all indorsements, writings, figures, etc., thereon shall be copied on the back of the exhibit.   These terms do not exclude the right to place on the copy the indorsements on the original, even though they might be on the face of the instrument ;

they are broad enough to confer the right to duplicate all indorsements. It is manifest that this must be the proper construction, since it was the evident purpose of the parties to use a copy in place of the original, and we cannot assume that counsel entertained a covert purpose to compel the trial of the cause on an inaccurate copy. Whenever it is stipulated that a copy of an instrument may be used, and it can in any wise be gathered from the stipulation that the copy is incomplete, and that it is to be made to conform to the original for the purposes of the trial, the agreement must be construed, unless the construction is inhibited by the precise terms of the agreement, to intend that the copy may be completed so that in all of its particulars and details it shall exactly correspond with the original paper. No other construction is consonant with good faith, and with what must be assumed to be the honest purpose of attorneys who stipulate with reference to such matters. The amendment by the addition of that indorsement should have been permitted.

It is doubtful whether the contract thus amended, more completely than the other facts contained in the stipulation, demonstrates the nonexistence of a cause of action as against these defendants. The recited facts show that the several parties to this action entered into an executory agreement for the sale and conveyance of certain specified property, upon a definite consideration, payable at a named date, prior to the transfer of the title by the deed of the grantor, who was one of the contracting parties. There are but two things to be done ;—the payment of the consideration, and the execution and delivery of the deed evidencing the title. The proof was that on the 15th day of February, 1890, the deed was delivered to the defendants who were put in possession. According to well settled principles the delivery and acceptance of this conveyance annulled and abrogated the prior executory agreement, which may be no longer resorted to for the purpose of ascertaining the terms on which the land was sold, unless it is shown by otherwise competent testimony that

something remained to be done after the transfer of title. It is probably true that the defendants were bound to pay not only the $1.435, which was the expressed consideration, but likewise the taxes assessed against the property prior to the conveyance. This is evident from the terms of the written agreement, and it results from specific legislation on this subject. The statute provides that as to all land conveyed between January and May the grantee must pay the taxes which stand assessed against the property. On any hypothesis, then, the taxes which the company paid and sought to recover stood as a legitimate lien on the property conveyed to the defendants, and they took it subject to that lien, which they were bound to discharge. But the company could not recover on the production and proof of the agreement, because it was merged in the deed which they had executed, and this must be deemed to express the final and entire agreement between the parties, and to have been delivered on the payment of the purchase price, unless by competent evidence, and in some legitimate way it be satisfactorily established that the defendants remained liable to pay a portion of the purchase price. There was no such proof in this case. The contract was surrendered and canceled, the deed executed and delivered, the premises turned over to the defendants, and they took the property burdened with the lien for the unpaid taxes, as to which no personal responsibility rested on the corporation. There is nothing in the stipulation to show that the legal effect of these various acts was at all varied by any parol or other contract between the parties, nor that by the terms of the agreement there was any continuing series of acts which would take the case out of the general operation of the law of merger. It must therefore be held that the company could not recover on the basis of the executed contract which was canceled and extinguished by the act of the parties, and by the operation of this well settled doctrine. *Williams v. Hathaway*, 19 Pick. 387 ; *Witbeck v. Waine*, 16 N. Y. 532; *Jones v. Wood*, 16 Pa. St. 25 ; *Laflin v. Howe*, 112 Ills. 253 ; *Bryan v. Swain*, 56 Cal. 616.

Since the plaintiff was not entitled to recover in an action brought on an extinguished contract, he was equally barred to maintain the action by the circumstances of the payment. It will be remembered that the deed was executed by the company on the 10th of February, 1890, and delivered to the defendants on the 15th of the same month when the contract was surrendered and marked "canceled by substitution of deed to property." At that time it is conceded that no cause of action had then arisen in favor of the company. The taxes were unpaid, and the company did not insist on an advancement by the grantees prior to the transfer of title. Subsequently, and on the 28th of February, the company paid the treasurer the $64.12 for the taxes of the preceding year, which became delinquent on the first of January. At that time they had parted with the title, and under our statute there remained as against them no individual liability to pay them. The taxes were against the property. There was a lien on it in the hands of the grantees, who held it subject to their obligation to pay. If there was any personal liability, it was rested on them. Under these circumstances the payment of the taxes by the company was precisely analogous to the payment of a debt of one person by a stranger, and it is uniformly held that such a voluntary payment gives to the payor no cause of action against the person whose debt he may have liquidated. *Wilkes v. Harper*, 1 N. Y. 586; *Brown v. Chesterville*, 63 Me. 241; *Muller v. Eno*, 14 N. Y. 597; *McGee v. City of San Jose*, 68 Cal. 91; *Fowler v. Moller*, 10 Bosw. 374.

These considerations serve to demonstrate that the judgment cannot be supported upon the case made. The agreed statement of facts is insufficient to show a cause of action against these defendants, and for the reasons given the judgment must be reversed and remanded.

*Reversed.*