---

(15 Misc. Rep. 202.)

### In re PLOPPER'S ESTATE.

(Surrogate's Court, Cattaraugus County. December, 1895.)

1. SUBROGATION—PAYMENT OF NOTE BY WIDOW OF MAKER.

Where the widow of the maker of a note, before her appointment as administratrix, pays the note. and it is thereupon delivered to her by the holder, she will be subrogated to the rights of the holder.

2. SALE OF DECEDENT'S LAND—INSUFFICIENCY OF PERSONAL ASSETS.

A petition for the sale of a decedent's land to pay debts alleged that he owned no personal property at the time of his death. The evidence showed that intestate and his wife resided on a farm which decedent had contracted to buy in his own name; that the contract had been foreclosed because of his inability to make the payments, and petitioner's wife became the purchaser: that all the personal property on the farm had been produced on, or paid for out of the avails of, the farm. None of decedent's individual funds had been invested in the purchase of any of the property. No other property than that on the farm was alleged to have been owned by him. *Held*, that it sufficiently appeared that decedent owned no personalty at the time of his death.

Application for leave to sell the real estate of John Plopper, deceased, for the payment of debts.

E. A. Nash, for petitioner.

John Mosher, for contestants.

DAVIE, S. John Plopper died intestate, at the town of Leon, July 24, 1891, leaving, him surviving, his widow, but no descendants. He was the owner of the real estate described in the petition, consisting of a dwelling and small tract of land, of the value of $600. The widow was appointed administratrix on the 4th day of February, 1895, and thereafter filed her petition for a disposition of such real estate for the payment of the debts of the intestate. The funeral expenses, including the amount expended for a tombstone, were the sum of $140. He was indebted, at the time

of his decease, for medical attendance, to the amount of $40; also upon a promissory note, given by him to one Snyder to secure a portion of the purchase price of the premises described in the petition. The widow made a small payment upon such note shortly prior to the death of the intestate, and after his death, and before her appointment as administratrix, paid the balance to Snyder; and the note was thereupon transferred to, and is now held by, her, and she seeks to have the amount thereof established as an indebtedness of the intestate in her favor. The contestants object to the making of a decree for the disposition of such real estate, asserting that the proof fails to show insufficiency of personal estate to satisfy such indebtedness, and that, the widow having voluntarily intervened and paid the indebtedness to Snyder, she is not a creditor of the estate, within the meaning and purview of the statute.

The evidence fails to show the particular circumstances under which the various payments were made by the widow to Snyder upon this note, nor is there any direct proof that such payment made prior to the death of the intestate was at his request; but it does satisfactorily appear that she paid the entire amount of such note from her individual property, and that, upon such payments being completed, Snyder delivered the note to her, and she presents the same, with proper proof of its execution by the intestate, as evidence of her demand against the estate. Had Snyder continued to hold such note there could, of course, have been no question of his right to have maintained this proceeding to enforce its collection from the real estate, in case of insufficiency of personal assets, nor could the right of the widow to resort to the same remedy have been questioned had the proof distinctly shown that she had purchased the note of Snyder; but, having paid the note prior to her appointment as administratrix, it is claimed that such payment was entirely voluntary, and that she is not subrogated to the rights and remedies of the original creditor.

It is undoubtedly true that the doctrine of subrogation should only be applied when justice will be promoted thereby, and that one who is a mere volunteer may not invoke its aid. Acer v. Hotchkiss, 97 N. Y. 395. One who pays a debt for which he is not personally bound, and which is not a charge upon his property, is not entitled to be subrogated to a lien which the creditor had upon the estate of the debtor. Wilkes v. Harper, 1 N. Y. 586. But the case at bar hardly calls for an application of the principle enunciated in the authorities cited. It is of but little consequence that the widow paid this indebtedness to Snyder before her appointment as administratrix, inasmuch as she was subsequently appointed, and seeks to maintain this proceeding in that capacity. The situation is simply this: The husband, in his lifetime, purchased the real estate in question, and gave a note to Snyder as part payment of the purchase price. The widow paid this note to Snyder. The contestants, who are distant and collateral relatives of the intestate, insist that she is not entitled to reimbursement out of the land, but that they, as the heirs at law of the intestate, are entitled to hold this real estate discharged from all obligation to make

such reimbursement.    The equitable features of such claim are not very apparent.    It would result in great injustice to the widow to hold that she was to lose, and the contestants to gain, the benefit of this payment made by her.    In the case of Ball v. Miller, 17 How. Prac. 300, it was held that where, upon the judicial settlement of the accounts of an administrator, a balance was found due to the representative from the estate, such balance, so far as it consisted of, or was caused by, the application of the moneys of the estate to the payment of debts existing against the intestate in his lifetime, should be satisfied out of the proceeds of the sale of the real estate.    Justice Hogeboom, in the opinion in this case, says:

"So far as the excess in Mrs. Casey's expenditures as administratrix over her receipts is caused by the application of the moneys of the estate to the payment of debts existing against the intestate in his lifetime, I think she ought to be regarded as the equitable assignee of those claims, and to be subrogated to the rights of those creditors. This is a familiar principle in equity jurisprudence, and the surrogate's court partakes strongly of the characteristics of an equity tribunal. In equity, the payment of a claim does not always and necessarily extinguish it, but it is deemed merged, extinguished, and satisfied, or kept alive, according as equity and justice require. In this case there was no obligation on the part of the administratrix to make payments beyond the personal assets in his hands; and, if she made them, it must be deemed to have been done for the convenience of the creditor or for the benefit of the estate, and not to her own prejudice. To the extent that she has applied her own moneys or those of the estate upon the claims of creditors of the deceased, I think she must be regarded as the equitable assignee of those demands, and entitled to satisfy them, out of the proceeds of the real estate, in the same manner as the original creditors; and such, I think, is the fair effect of the authorities."

See opinion, page 305.    And in this connection the court cites Livingston v. Newkirk, 3 Johns. Ch. 312, 318; Evertson v. Tappen, 5 Johns. Ch. 497, 514; Gilchrist v. Rea, 9 Paige, 66; Collinson v. Owens, 6 Gill & J. 4.    The case of Ball v. Miller is cited and recognized as authority in Duntz v. Duntz, 44 Barb. 461.

The only satisfactory conclusion which can be arrived at from a careful review of all the authorities, taking into consideration the obvious equities of the widow's claim, is that she should be permitted to recover, from the proceeds of the sale of the real estate, not only the funeral expenses paid by her, but also the amount advanced by her to Snyder upon the note of the intestate.

In regard to the remaining proposition, that the evidence fails to show insufficient personal estate for payment of these debts: The title to real estate, upon the death of the owner intestate, vests immediately in his heirs; and it can be taken for the payment of debts only by virtue of the statute, and the statutory provision must be strictly followed.    To justify a surrogate's decree directing the sale of real estate of which the intestate died seised for the payment of his debts, it must be made to appear that all the personal property of the decedent which could have been applied to the payment of the decedent's debts and funeral expenses has been so applied, or that the administrator has proceeded with reasonable diligence in converting the same into money, and applying it in such payments, and that it is insufficient for the payment of the same.    Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845.    The judi-

cial settlement of the accounts of the administrator was not a jurisdictional requirement before instituting this proceeding; but where no such settlement has been had, the administrator assumes the burden of showing affirmatively, as a part of her case, the facts required by section 2759 of the Code. In re Howard's Estate, 11 Misc. Rep. 230, 32 N. Y. Supp. 1098. Then the question arises, does the evidence in this case satisfactorily show such insufficiency of personal assets? The petition alleges that the intestate owned no personal property at the time of his death. It appears from the evidence that, for many years prior to his death, the intestate and the petitioner had resided upon a farm in the town of New Albion, and that such personal property as was upon the farm had been produced and raised upon or paid for out of the avails of the farm; that intestate originally contracted in his own name for the purchase of the farm, but, being unable to meet the payments, the contract was foreclosed, and upon the sale under such foreclosure the petitioner became the purchaser; and that for many years the title to such land was in the name of the petitioner. On the examination of the petitioner as a witness on her own behalf, she was asked the following question: "Did he (the intestate) own any personal property?" to which she replied, "I calculated we owned it together. He bought the mowing machine, rake, and tools, and such things as were there." But, upon her further being interrogated as to the circumstances, it quite clearly appeared that such reply did not represent the actual situation. The intestate had no interest in the farm, nor does it appear that he had any interest in the avails thereof. He had for many years been lame, and to some extent unable to work. None of his individual funds had been invested in the purchase of the stock or tools upon the farm. In fact, the petitioner held the legal title to all the personal estate upon the farm. There is no pretense that the intestate was possessed of any personal estate aside from such personal property as was upon the farm at the time of his death, and I am clearly of the opinion that the evidence discloses that all of this property belonged absolutely to the petitioner individually. This being the case, it must be held that the petitioner has satisfactorily established all the requisite facts to entitle her to a decree in this matter. Appraisers will, accordingly, be appointed, and upon the filing of their report a decree will be made for such disposition of the real estate as such report shows to be advisable.

Decreed accordingly.