## MARY H. SHREVE

*v.*

## JOHN B. HANKINSON et al.

After a second mortgage had been taken on certain lands, a payment of part of the principal of the first mortgage was made by a brother of the mortgagor, under an agreement between the holder of the mortgage and the mortgagor and his brother, that the latter should be subrogated to the rights of the mortgagee under the mortgage for those payments.—*Held*, that, as against the holder of the second mortgage, such conventional subrogation could be enforced. The payments were, in fact, made after the second mortgage was given.

Bill to foreclose and cross-bill.  On final hearing on plead-
ings and proofs.

*Mr. J. C. Ten Eyck,* for complainant.

*Mr. W. A. Barrows,* for Risdon Hankinson.

*Mr. F. Voorhees,* for Abraham Vanderbeck.

THE CHANCELLOR.

The only litigation in this cause is that which arises out of
the cross-bill filed by Risdon Hankinson to establish his claim
to the security of the complainant's mortgage to the amount of
$2,500 and interest, after the complainant's claim under the
mortgage shall have been paid.  The mortgage was originally
for $13,700 and interest.  It was given by John B. Hankinson
and wife to John Fairbairn, March 25th, 1870, and was payable
in four years.  At Fairbairn's death it came into the hands of
Joseph Becher, his executor.  There were then due upon it
$11,500 of principal, besides interest.  August 5th, 1876, there
were paid to Becher $1,000 on account of the principal, and on
the 24th of April following, $1,500 on the same account.  The
money for those payments was furnished by Risdon Hankin-
son, the complainant in the cross-bill, brother of the mortgagor,
John B. Hankinson, at the request of the latter, and on an agree-
ment between them (and they insist Becher so agreed also), that
the former should have an interest in the mortgage to the amount
of those advances, and interest for his security.  On June 11th,
1877, Becher assigned the mortgage to Annie H. and Fannie S.
Fairbairn, and they, March 25th, 1878, assigned it to the com-
plainant.  Risdon Hankinson's claim to subrogation is contested
by Abraham Vanderbeck only.  He is the holder of a subsequent
mortgage given to him by John B. Hankinson on the premises.
It was subsequently canceled of record, but Vanderbeck, in
another suit in this court, seeks to set aside the cancellation.
Both the payments made with the money advanced by Risdon
Hankinson were made after Vanderbeck's mortgage was given,

which was November 8th, 1875. That they were made by John B. Hankinson with money borrowed from his brother Risdon for the purpose, and lent by the latter to him on the agreement that the lender should have the benefit of the mortgage for his security for the repayment thereof, with interest, there is no room to doubt. And it seems quite clear, also, that Becher, to whom the payments were made, was a party to the agreement. Not only do both the Hankinsons swear to it, but the testimony of Mr. Barrows (a counselor at law) to the same effect, is positive and explicit. He testifies that, in the summer of 1876, John B. Hankinson called on and requested him to find somebody who would advance the money for the mortgage, on which there were then due of principal, $12,000; that John B. and Risdon Hankinson consulted him with reference to the feasibility of securing the latter for the amount of an advance of $2,500 to be paid on the mortgage, which Risdon was willing to make, provided he could be secured by means of the mortgage. Mr. Barrows, both before and after advising with more experienced counsel on the subject, advised them that Risdon could be secured by the mortgage for the sums he should advance for the payment on account of the principal thereof, and which should be so paid, provided the money should be advanced on that condition and John's promise that it should be so secured. John borrowed the money under such promise, and paid it over to Becher on account of the principal of the mortgage. Mr. Barrows further testifies as follows :

" On the 24th of April following (1871)—it may possibly have been the 23d, but my impression is that it was the 24th—Joseph Becher, executor of Fairbairn, John B. Hankinson and Risdon Hankinson, met at my office; Risdon Hankinson was then prepared to advance the further sum of $1,500 to Becher, on the Fairbairn mortgage; in the presence of all three above named I stated how Risdon expected to be secured for the sum he was about to advance, that he was to have an interest in the Fairbairn mortgage to that extent by the promise and express agreement of John B. Hankinson and of Becher, the executor; I asked John B. Hankinson and Becher if they both promised and agreed to that effect with Risdon Hankinson ; they each replied they did ; Mr. Becher then explained to me that he had already received $1,000, in August preceding, on the same agreement, and had given to John B. Hankinson a receipt for $1,000, on account of the mortgage, as coming from Risdon Hankinson; the money was in shape of a check which was for a

larger amount than $1,500, as I remember it; Mr. Becher wanted the money or a certified check; Risdon Hankinson and Becher went to the bank, and returned to my office after a short interval; the money was paid to Mr. Becher in my presence, and was paid by Risdon Hankinson, on the express condition which I then and there in the presence of all of them stated, to wit, that he, Risdon Hankinson, should be subrogated to and have an interest in the Fairbairn mortgage for the moneys he so advanced to be paid thereon; and as Mr. Becher resided out of the state, he agreed to sign a paper, to be drawn up by myself, reciting the facts of the payments by Risdon Hankinson of the several sums of $1,000 and $1,500, on account of the mortgage, and containing an agreement that Risdon Hankinson should have an interest in the mortgage to the extent of the sums so paid by him, but which should be subject and subsequent to the interest retained by him; the interview closed before such paper could be drawn, as Mr. Becher was desirous of returning to Philadelphia on a train then about to start."

Both the Hankinsons corroborate him in this statement. In opposition, the testimony of Mr. Charles E. Hendrickson, who was Becher's attorney, is produced. The material portions of his testimony are to the effect that, before the payment of April, 1877, was made, John B. Hankinson called on him and desired to know whether Becher could not make an assignment of an interest in the mortgage to secure Risdon, if the latter should lend him the money to pay on the mortgage; that Mr. Hendrickson replied, saying that he had doubts whether such an assignment was feasible; that Hankinson then requested him to draw some paper of that kind and get Becher to sign it; that Mr. Hendrickson declined, saying he could do nothing about it until after he had consulted Becher; that Hankinson requested him to see Becher on the subject; that Becher afterwards came to his office to see him about the matter and inquired whether he could make such an assignment without prejudice to himself as executor, or to the Fairbairn girls, to whom he expected to assign the mortgage, expressing his willingness to make the assignment if it would not prejudice him or his assignees; that Mr. Hendrickson advised him against making the assignment; that Hankinson called on Mr. Hendrickson again, and the latter told him what advice he had given to Becher, and that Hankinson urged upon him the contrary view of the matter, insisting that the assignment could and ought to be made, but Mr.

Hendrickson declined to advise Becher to make it.   Mr. Hendrickson further says that when, or soon after, the payment was made, Risdon Hankinson called on him, and, after Mr. Hendrickson had communicated to him Becher's unwillingness to make the assignment, Hankinson requested him to draw a paper stating that he, Hankinson, had paid the money.   He did so, and Hankinson signed it, and left it with Mr. Hendrickson. That paper was in form a certificate that Risdon Hankinson had paid to Becher, for his brother John, $1,500, on account of the bond and mortgage; that he consented that that money should be endorsed on the mortgage as received from him, and that he claimed an interest for that money in the mortgage, but made no personal claim for it against Becher or Fairbairn's estate, or any person to whom the bond and mortgage should be assigned.   The paper is dated April 30th, 1877.   The $1,500 were paid on the 24th of that month, six days previously.   This paper is evidence that Risdon Hankinson, when he paid the money mentioned therein, looked to the mortgage as security for it.   Becher's agreement to assign, testified to by Mr. Barrows, was made on the day the $1,500 were paid—April 24th.   John B. Hankinson swears that when the payment of August, 1876—$1,000 —was made, there was an agreement between Becher and him that when the whole of the $2,500 was paid Risdon should have an interest in the mortgage to that amount.   Becher never made the assignment.   It may be that Risdon Hankinson, being apprehensive that Becher would not make the assignment according to his promise, conceived the expedient of putting his claim in writing, and leaving it with Becher's attorney.   The testimony of Mr. Hendrickson does not countervail or contradict that of Mr. Barrows and the Hankinsons.   Nor is the fact that when Mrs. Shreve took the assignment of the mortgage, John B. Hankinson certified on the mortgage that there was then due thereon $9,000 of principal and $165 of interest, at all significant.   The certificate was not made by Risdon Hankinson, but by John B. Hankinson, and it was intended to estop him from denying that those amounts of principal and interest were recoverable by the holder of the mortgage, under assignment from

the Fairbairns. It is clear from the evidence that Becher agreed that if Risdon Hankinson would advance the $2,500 to be paid on account of the principal of the mortgage, he would give him, for security for the repayment thereof, an assignment of an interest to that amount in the mortgage ; the remaining principal, and the interest thereon, to have priority over Risdon Hankinson's claim.

It is urged, on behalf of Vanderbeck, that the rule which denies subrogation in case of merely partial payment is fatal to that claim. But that rule is not applicable to this case. Risdon Hankinson's claim is for conventional, not legal, subrogation. A stranger, who, by the authority and consent of the debtor, and on his agreement that he shall be subrogated to the rights of the creditor, makes payment for the debtor, will be subrogated if the payment is made with the express declaration of the subrogation in the release made by the creditor. *Dixon on Subr. 164.* The debtor and creditor in this case expressly agreed with Risdon Hankinson that if he would furnish the $2,500 he should have an assignment of the mortgage *pro tanto* to secure the repayment of the money. It would be against equity to deny Risdon Hankinson the benefit of that agreement. The fact that Becher did not fulfill his promise to assign could not, of course, avail him. If he were still the holder of the mortgage, he could not successfully resist the claim. No right of the complainant claiming under assignment through him will be affected by according it. Nor will any injustice be done to Vanderbeck in allowing it if he succeeds in re-instating his mortgage, for the payments in question were made after he took his mortgage. There will be a decree directing that the property be sold to raise, in the first place, the amount due the complainant, with her costs ; and, in the next place, the $2,500 and interest due Risdon Hankinson, with his costs. Vanderbeck's mortgage is, as before stated, in litigation. He proposes to appeal from the decree in his suit, and asks that the sale of the mortgaged premises be deferred until after the determination of his appeal ; that is, he seeks to stay the sale and prevent the raising of the money on the complainant's mortgage until he

shall have ascertained, by means of the appeal, whether he has any interest in the property to protect. It would obviously be unjust to accord his request.