WILLIAM GANS et al., Appellants, *v.* HERMAN THIEME, Individually and as Administrator, et al., Respondents.

One who, at the request of another, advances money to redeem or pay off a security in which the latter is interested, or to the discharge of which he is bound, is entitled to be subrogated to the security.

In the absence of an express agreement one will be implied that the security shall subsist for the use of the lender, and it will be so enforced.

*It seems*, that the doctrine of substitution may be applied for the purpose of doing justice, in the absence of any agreement, express or implied.

T. died seized of certain premises subject to a mortgage of $2,000, bearing interest at seven per cent, which he was personally bound to pay. His widow, who was executrix under his will, subsequently married B. For the purpose of paying off the mortgage and getting a loan at a less rate of interest, said executrix and her second husband borrowed of plaintiffs $2,000 upon the understanding that the premises were to be the primary fund for the payment thereof, and that plaintiff should stand in the place of the original mortgagee. The loan was used in taking up the mortgage, which was satisfied of record. Mr. and Mrs. B. executed to plaintiffs their bond, with a new mortgage, in both of which the latter was described as executrix. Neither she nor B. had any personal interest in the premises, and she had no authority as executrix to give a mortgage. *Held*, that plaintiffs, as against those taking the premises under the will of T., were entitled to have the satisfaction-piece canceled, and to be subrogated to the lien of the original mortgage.

(Argued June 7, 1883; decided October 2, 1883.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made October 5, 1881, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought against defendants, the children and devisees, under the will of Herman Thieme, deceased, and against the German Savings Bank of Brooklyn, to have a satisfaction-piece executed by said bank of a mortgage upon a certain lot of which Thieme died seized, canceled and vacated, and to compel the bank to assign the mortgage and accompanying bond to the plaintiffs and for a foreclosure of said mortgage.

The material facts are stated in the opinion.

*W. W. Ladd, Jr.*, for appellants. Where one advances to another money to pay a lien on the latter's property, and he is to receive a security for his loan, and the security given is for any cause void, the lender will be subrogated by a court of chancery to the rights of the paid lienor, and may enforce them as far as necessary to make good his debt, where no prior equities have intervened. (*Patterson* v. *Birdsall*, 64 N. Y. 294; *Barnes* v. *Mott*, id. 397; *Green* v. *Millbank*, 3 Abb. N. C. 138; *Clarke* v. *Barnes*, 76 N. Y. 301–305; *Johnson* v. *Parmley*, 14 Hun, 398; *Snelling* v. *McIntyre*, 6 Abb. N. C. 469; *Stover* v. *Wood*, 26 N. J. Eq. 417; *Reed* v. *King*, 23 Iowa, 500; *Reagan* v. *Hadley*, 57 Ind. 509; Sheldon on Subrogation, §§ 8, 19, 20; *Russell* v. *Mixer*, 42 Cal. 475; *Bruce* v. *Bonney*, 12 Gray, 107.) The jurisdiction of a court of equity where an agreement to execute a mortgage has not been carried out, or where, through fraud, accident or mistake, a mortgage is improperly executed, is firmly established. (*Chase* v. *Peck*, 21 N. Y. 581; *Matter of Howe*, 1 Paige, 125; *Hatch* v. *Morris*, 3 Edw. Ch. 313; *Moore* v. *Thomas*, 1 Oregon, 201.) Plaintiffs were entitled to a judgment subrogating them to the rights of the German Savings Bank in the Distler mortgage, " canceling the satisfaction-piece thereof," and declaring the same to be " a valid and subsisting lien," and

for " the usual judgment of foreclosure and sale." (*Patterson* v. *Birdsall*, 64 N. Y. 295, 296.) Under section 1207 of the Code a complaint should not be dismissed merely for error in the prayer for relief, or because the plaintiff has alleged too much, if there be allegations supported by evidence entitling him to any relief upon any theory not irreconcilable with such allegations themselves. (*Wright* v. *Hooker*, 10 N. Y. 51; *Wright* v. *Wright*, 54 id. 437; *Benedict* v. *Benedict*, 85 id. 625.)

*George H. Fisher* for respondents. The mere fact that a party is a subsequent mortgagee does not entitle him to an assignment of a prior mortgage. There must be some peculiar equity. (42 N. Y. 89; 5 Hun, 641; 7 id. 459; id. 522; 70 N. Y. 557.) If a second mortgagee is not entitled to be subrogated, still less is a stranger, which plaintiffs in this case were. (*Wilkes* v. *Harper*, 1 N. Y. 586; 10 Reporter, 128; 5 id. 69, 748; 3 N. Y. W'kly Digest, 262; 7 id. 127; *Sandford* v. *McLean*, 3 Paige, 123; 5 N. Y. 171; 1 id.. 595; 4 id. 173; 8 id. 44; 17 id. 415; 2 id. 397; 42 id. 89; *Cole* v. *Malcolm*, 66 id. 363; *Townsend* v. *Whitney*, 15 Hun, 93; *Crosby* v. *Crafts*, 69 N. Y. 607; *Green* v. *Milbank*, 3 Abb. N. C. 138; *Patterson* v. *Birdsall*, 6 Hun, 632; 64 N. Y. 295; *Dings* v. *Parshall*, 7 Hun, 522; *Marsh* v. *Benedict*, 14 id. 317; *Vandercoot* v. *Cohoes, etc.*, 5 id. 641; *Union Trust Co.* v. *Monticello, etc.*, 63 N. Y. 311; *Morse* v. *Brockett*, 67 Barb. 234; *Boyd* v. *McDonough*, 39 How. 389; *Johnson* v. *Zink*, 52 Barb. 396; *Westfall* v. *Hintze*, 7 Abb. N. C. 237; *Curtis* v. *Kitchen*, 8 Martin [La.], 706; *Nolte* v. *Creditors*, 19 id. 602.) It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. (*Baldwin* v. *Moffitt*, 26 Hun, 209; 3 Paige, 122; *Twombly* v. *Cassidy*, 83 N. Y. 125.)

*Joseph A. Burr, Jr.*, guardian *ad litem* for infant defend-

ants. As the bond and mortgage does not purport to be executed by Mrs. Bethon in her representative capacity, the word "executrix" must be regarded as mere surplusage. (*Merritt* v. *Seaman*, 6 N. Y. 168; *Sheldon* v. *Hoy*, 11 How. Pr. 11; *Worden* v. *Worthington*, 2 Barb. 368; *Christopher* v. *Stockholm*, 5 Wend. 36.) The plaintiffs are not entitled, as against the infant defendants, to be subrogated to the rights of the bank. (1 Story's Eq. Jur., §§ 635, 642; Willard's Eq. Jur. [Potter's ed.] 339; 1 Jones on Mortgages, § 874; 2 Story's Eq. Jur., § 1023.) In order to constitute a right to subrogation by operation of law, the person paying the mortgage debt must either be entitled to redeem from the mortgage; must be a co-creditor with the mortgagee of a common debtor, or must occupy some position with reference to the debt as surety for its payment, which renders it necessary for the protection of his own already existing rights, to pay the debt and obtain possession of the securities. (Brandt on Suretyship and Guaranty, § 260; *Muir* v. *Berkshire*, 52 Ind. 149; *Griffin* v. *Orman*, 9 Fla. 22; *Winder* v. *Diffendorfer*, 2 Bland's Ch. [Md.] 166; *Richard* v. *Marston*, 15 Ind. 134; *Coe* v. *N. J. M. R. R. Co.*, 27 N. J. Eq. 110; *Hough* v. *Ætna L. Ins. Co.*, 57 Ill. 318; *Wilson* v. *Brown*, 2 Beasley [N. J.], 277; *Shrim* v. *Budd*, 1 McCarter [N. J.], 234; *Banta* v. *Garmo*, 1 Sandf. Ch. 383; *Sandford* v. *McLean*, 3 Paige, 117; *Jenkins* v. *Cont. Ins. Co.*, 12 How. Pr. 66; *Goodyear* v. *Watson*, 14 Barb. 481; *Baldwin* v. *Moffit*, 26 Hun, 209; *Wilkes* v. *Harper*, 1 N. Y. 586; *Ellsworth* v. *Lockwood*, 42 id. 89; *Union T. Co. of N. Y.* v. *M. & P. J. R. R. Co.*, 63 id. 311; *Cob* v. *Malcolm*, 66 id. 363; *Alfred* v. *Cobb*, 28 Hun, 22; *Twombly* v. *Cassidy*, 82 N. Y. 159.) The plaintiffs cannot charge the property of the infant defendants with an equitable lien for the amount of the money advanced by them. (Thomas on Mortgages, 31; *Vail* v. *Foster*, 4 N. Y. 313; *Hazewell* v. *Coursen*, 81 id. 630.)

DANFORTH, J. So far as material upon this appeal the facts are that one Herman Thieme (deceased) was at the time of his

death the owner of certain land, now described as lots A and B, subject to a mortgage of $2,000 to the German Savings Bank, which he was personally bound to pay. He left surviving a widow and several children, and by his will appointed his widow, Margaretha Thieme, and one Mathias J. Petry his executors. They conveyed lot "B" to one Oexle; the bank released it from the mortgage and loaned to Oexle $3,000 upon a mortgage executed by him on the same lot. He then conveyed lot B to Mrs. Thieme. She afterward intermarried with Charles Bethon, and by subsequent conveyances the title to lot B, subject to the $3,000 mortgage, was vested in them as husband and wife. The two mortgages bore interest at the rate of seven per cent. In December, 1875, they were due, and nothing had occurred to relieve the estate of the deceased from its liability to pay off the $2,000 mortgage as one of his debts. The questions before us relate to this mortgage only.

It is stated in the complaint, in substance, as ground of the relief sought, that between December 1, 1875, and January 6, 1876, the executors applied to the plaintiffs to advance and loan upon the security then held by the savings bank the sums of $2,000 and $3,000 for five years, but at six per cent interest instead of seven; at the same time agreeing to cause the mortgages to be assigned to them; that they, relying on these assurances, advanced the money to the estate of Herman Thieme and the executors paid it over to the bank, but permitted the mortgages to be discharged of record and subsequently delivered to the plaintiffs a bond executed by Charles Bethon and Margaretha (late Thieme), executrix, etc., for the sum of $3,000, with a mortgage as collateral thereto, executed in like manner upon lot A, and a bond signed by Margaretha Bethon and Charles Bethon for $2,000, with a mortgage collateral thereto upon lot B, and that they were delivered to the plaintiffs "in place of the bonds and mortgages held by the savings bank without the knowledge or consent of the plaintiffs, who were ignorant of the true character of the papers so delivered to them till shortly before commencing the action."

These allegations were disputed, and so far as they relate to the form of the application or the character in which it was made, the trial court has found against the plaintiffs and "that the said sum of $5,000 was loaned and advanced by the plaintiffs to Charles Bethon and his wife;" but the court also finds "that it was used by them in paying off the said mortgages held by the said bank." If, as the defendants assume, the plaintiffs' right to recover depended upon proof of a formal express agreement to have the securities held by the bank assigned to them, it would be difficult to find any ground for this appeal; for although such agreement is substantially testified to by three witnesses — Gans, the plaintiff, Petry, the executor, and Bethon, the alleged borrower — it cannot be denie that the trial court was at liberty to reject their testimony as that of persons interested in the result or affected by considerations which that court might think sufficient to create a bias in favor of the plaintiffs. But they were neither impeached nor contradicted, and the testimony given by them is so supported by other circumstances as to leave no doubt that as between the plaintiffs on one side and the executor Petry and the executrix Margaretha and the estate of their testator on the other, lot A was expected to be the primary fund for the payment of $2,000, part of the $5,000 advanced by the plaintiffs. Indeed no intent on the part of the plaintiffs is discoverable to have the mortgage then existing released or the premises relieved from its incumbrance, but, on the contrary, a mere intent to continue the same with an extended term of credit. The existence of the mortgages was known to them, and at an interview between the executrix, the executor, Mr. Bethon and the plaintiff, there was talk about them, and, as Petry testifies, Margaretha (the executrix) "wanted to get cheaper interest." "She wanted," he says, "to get the interest for the benefit of the estate at six per cent. Mr. Gans agreed to let her have the money, provided he would get the same securities as the bank held. So I agreed to it. It was one per cent saved for the estate, and we accepted the bargain. Mr. Gans and we talked the matter over and it was agreed

upon that we will take the bonds and mortgages held by the
German Savings Bank, and give to Mr. Gans at six per cent
instead of seven per cent per annum."

The same in substance is the evidence of Gans and Bethon.
However it is viewed, no one has suggested that the plaintiffs
were to make a loan or an advance upon the personal credit
only of Bethon or his wife as such, or of both of them. What-
ever was done was upon the promise of security. It is plain
too that so far as the $2,000 was concerned, the security looked
to was lot A. It was necessarily implied, therefore, that the
instrument which afforded that security should be one already
executed, or to be executed by the person having the title, or
some other right or power to create a lien. The mortgage
held by the bank was so executed. The mortgage, in fact given
to the plaintiffs, was upon lot A, but neither Bethon nor his
wife as such had any interest in or power over it; nor had she,
as executrix, authority to give a mortgage. The one given
was worthless. But both bond and mortgage bear upon their
face evidence that the parties thereto supposed the estate of
Thieme was to be affected, and that Margaretha was acting in
a representative, not individual, capacity when she executed
them. The mortgagors are named as " Margaretha Bethon
(late Thieme), executrix of the last will and testament of
Herman Thieme, deceased, and Charles Bethon, her husband,"
while the bond describes her in the same capacity. That the
relation of the mortgagors to the other lot was deemed to be
different, is apparent from the fact that in the mortgage
conveying it they are described as " Charles Bethon and
Margaretha Bethon, his wife." In the one case assuming to
bind an interest of the estate, and in the other an interest in
themselves as individuals. Now add to these circumstances
the fact that the money was used to pay upon the mortgage,
and we have evidence corroborating the oral proof, and with
it conclusively establishing that by the understanding between
the executors and the plaintiffs, the latter have, as to the
$2,000, a right to stand in the place of the bank and have the
full benefit of its security. If, therefore, as the respondents

claim, the finding of the court below is to the effect that the loan was made by the plaintiffs to Bethon and wife, and not to the estate, it is without evidence and cannot be sustained.

It is no doubt true, however, as the learned counsel for the respondents argues, that a volunteer cannot acquire either an equitable lien or the right to subrogation (*Sandford* v. *Mc-Lean*, 3 Paige, 122; *Wilkes* v. *Harper*, 1 N. Y. 586; 2 Barb. Ch. 338), but one who, at the request of another, advances his money to redeem or even to pay off a security in which that other has an interest, or to the discharge of which he is bound, is not of that character, and in the absence of an express agreement one would be implied, if necessary, that it shall subsist for his use, and it will be so enforced. But the doctrine of substitution may be applied although there is no contract, express or implied. It is said to rest " on the basis of mere equity and benevolence " (*Cheeseborough* v. *Millard*, 1 Johns. Ch. 409; 1 Story's Equity Jurisprudence, § 493), and is resorted to for the purpose of doing justice between the parties. Here the defendants have no equity. In any aspect of the case the plaintiffs have paid a debt which the testator ought to have paid and a mortgage to which the land was subject, under the belief authorized by the words and acts of the legal representatives of the deceased, that they were to have a valid security upon it. It has not been given to them, and it will subserve the purposes of justice and violate no rule of law to subrogate them to the lien of the mortgage as against any of the parties to this action, since their title was affected by it (*Barnes* v. *Mott*, 64 N. Y. 397; 21 Am. Rep. 625), and no wrong can be done to either by putting the plaintiffs in the place of the original creditor.

The judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.