(110 App. Div. 262.)

### LESSER v. STEINDLER.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

1. HUSBAND AND WIFE—HUSBAND'S AGENCY—EVIDENCE.

Where a wife authorized the husband to redeem her jewelry from pawn, but did not give him sufficient funds, the jewelry having been pawned in the husband's name with the wife's consent, and she having authorized the pawnbroker to deliver it to her husband, he had apparent authority to induce another to redeem it and hold it to secure the advancement.

2. PLEADING—CONCLUSIONS OF LAW—NECESSITY.

An answer, in an action for the conversion of jewelry, alleging that defendant, at the request of plaintiff's husband, had redeemed it from pawn, he agreeing that defendant should retain possession until reimbursed, was sufficient, though it did not allege the legal conclusion that defendant was entitled to be subrogated to the pawnbroker's lien by having redeemed the property.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, § 29.]

3. SUBROGATION—REDEMPTION FROM PAWN.

Where defendant, at the request of plaintiff's husband, redeemed her jewelry from pawn, defendant was entitled to be subrogated to the pawnbroker's lien.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Subrogation, §§ 60, 61.]

Appeal from Trial Term, New York County.

Action by Rose Lesser against Marie Steindler. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Walter H. Liebman, for appellant.

Milton W. Goldsmith, for respondent.

LAUGHLIN, J. This is an action on an assigned claim for the conversion of certain jewelry. The plaintiff alleges that the jewelry consisted of a diamond pin, a pair of diamond earrings, and a diamond ring owned by her assignor, Bertha Hahn, who on or about the 1st day of December, 1900, delivered them to one Max Hahn, who agreed to return them upon demand; that on or about the 1st day of January, 1901, the defendant, knowing the jewelry to be that of plaintiff's assignor, without the knowledge of the latter, obtained the same from said Max Hahn; that plaintiff's assignor duly demanded a return of the jewelry, and thereafter duly assigned the property and cause of action to the plaintiff. The complaint was not verified. The answer put in issue the material allegations of the complaint, and for a separate defense alleged that the pin and earrings had been duly pawned, and plaintiff's assignor was negotiating and endeavoring, through her husband, who was her authorized agent, to obtain a larger loan thereon and redeem the same; that defendant, at the special instance and request of plaintiff's assignor, through her said authorized agent, and "for the purpose of making an increased and larger loan thereon" to plaintiff's assignor, paid the pledgee's lien thereon and redeemed the same, and advanced and loaned to plaintiff's assignor a further sum, making in all the sum of $500, upon the express agreement that she should retain the possession of the property until she should be reimbursed with 6 per cent. interest, which plaintiff's assignor agreed to do prior to the 15th day of January, 1904; that the ring belonged to the husband of plaintiff's assignor, and had also been pledged, and at his special instance and request defendant paid the amount of the pawnbroker's lien thereon and redeemed the same, and advanced further moneys, aggregating $230, upon the like agreement that she was to retain possession of the ring; and that subsequently, in consideration of the cancellation of his indebtedness to her, he sold her said ring.

The defendant and plaintiff's assignor were sisters-in-law; said Max Hahn, the husband of plaintiff's assignor, being the brother of the defendant. The defendant was called as a witness for the plaintiff, and testified that she got the pin and earrings from her brother, Max Hahn, between the 10th and 15th days of January, 1901, and the ring a day or two later, about the 12th. On cross-examination she testified that she met her brother at her sister's (Mrs. Louber's), and "he asked me to go down with them and take out some jewelry for him, else they would lose it; it is overdue and they have no money to take it out unless I help them out and take it out for them, and keep it until they have the money"; and that she went down with him and took it out. Her testimony as first given is quite indefinite and confused

as to the amount she paid the pawnbroker, and as to the amount she advanced to plaintiff's assignor's husband; but on being recalled she testified definitely that she paid the Provident Loan Association, with which the pin and earrings were pawned, $275 and interest, making a little over $300, and that she paid at Simpson's, another pawnbroker's, an additional sum to redeem the ring, making the aggregate amount she paid the pawnbrokers for the redemption of the jewelry $451.50, and that this, together with the amounts she advanced to plaintiff's assignor's husband for his wife, aggregated $730. Plaintiff's assignor testified that she owned all of the jewelry and that it was pledged at the Provident Loan Association and at Simpson's in her husband's name with her consent; that she was desirous of obtaining it again, and spoke to her husband about it, saying that she had only $200, which was not sufficient to redeem it, and that he offered to pay an existing indebtedness owing by him to her, by advancing the additional amount necessary, and she thereupon gave him the pawn tickets and the $200; that he subsequently informed her that he had obtained the jewelry and placed it in the safe in a livery stable conducted by her; that she could not open the safe, and had a disagreement with her husband on account of his failure to open it or bring her the jewelry; that some time thereafter she found a certificate in her husband's pocket, signed by defendant and dated January 15, 1901, stating that defendant had advanced $500 on the pin and earrings and $180 on the ring, and that she would return the jewelry to "Max Hahn or any other person" on payment of those amounts with 6 per cent. interest.

We are of opinion that a new trial should be granted. The husband of plaintiff's assignor was authorized to redeem the jewelry and was not given sufficient funds with which to do it. Although defendant knew that part of the jewelry was owned by her brother's wife, yet it had been pawned in his name by consent of his wife, and she had by letter authorized the pawnbroker to deliver that part, which defendant understood was owned by her sister-in-law, to her husband. In these circumstances we think the plaintiff's assignor clothed her husband with apparent authority to induce another to redeem the property and hold the same as security for the money thus advanced. The defendant, not being a mere volunteer, became subrogated to the lien of the pawnbroker. Gans v. Thieme, 93 N. Y. 225. The answer sufficiently pleaded the facts, and it was not essential that it should have averred the legal conclusion as to defendant's rights by reason of having thus redeemed the property. The attention of the learned trial justice does not appear to have been drawn to this point until after the charge and just before the jury retired, and then not pointedly. Down to that time the question litigated seems to have been concerning the authority of the husband to pledge the property, and that was the question submitted to the jury. By the last request to charge, however, we think counsel for defendant saved the rights of his client; and yet the point was not so clearly presented that the exception to the refusal to charge would be deemed reversible error, were it not for the fact that there appears to be no good reason in law or justice why the defendant should not be deemed to have a lien on the jewelry, for the moneys advanced to redeem the property, together with interest thereon, and

be permitted to retain possession until she is reimbursed. She was not a wrongdoer. There is nothing to impeach her good faith in advancing the money, to the extent, at least, necessary to redeem the jewelry. Plaintiff's assignor could not have obtained it from the pawnbrokers without paying the amount defendant paid, and there appears to be no reason why defendant should not be deemed subrogated to the lien of the pawnbroker. The last request to charge, made by counsel for defendant, was "that under the circumstances of this case Mrs. Hahn cannot repudiate her husband's act on the claim that it was unauthorized, and the same time retain the benefit received by her on the payment of the indebtedness for which the jewelry was originally pledged." This was declined, the court saying: "There is no such question in the case." Counsel for defendant should then have drawn the attention of the court to the answer, and should have stated the point more plainly; for it is evident that from his presentation of the defendant's case throughout the trial, and his motion for a nonsuit and direction of a verdict, the court naturally did not appreciate that the point was in the case. However, we think the point was raised by the answer and the evidence, and that the ends of justice require a new trial.

The judgment and order should therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.