This case was heard below upon facts agreed, as follows:
1. Both plaintiff and defendant Scotland Neck Bank are, and were at the time of the acts hereinafter set out, corporations of this State, doing a general banking business.
2. On 1 November, 1904, S.W. Morrisett and J. G. Morrisett, partners as Morrisett Bros., gave their note to defendant Scotland Neck Bank for $1,500, for borrowed money, and to secure the same, S.W. Morrisett and wife executed to the said Scotland Neck (240) Bank a mortgage on real estate in the town of Scotland Neck, N.C. which was duly recorded.
3. Some time after the maturity of the note and demand for payment, Morrisett Bros., through S.W. Morrisett, requested the plaintiff bank to take up said note and mortgage and carry the same for them, which plaintiff agreed to do, upon the distinct understanding and agreement between it and Morrisett Bros. that they should have the Scotland Neck Bank transfer and assign to plaintiff the note and mortgage as security for the amount so furnished by it.
4. In pursuance of said agreement, the plaintiff, on 2 October, 1905, furnished Morrisett Bros. with an amount of money sufficient to take up said note and mortgage (for which funds Morrisett Bros. executed to it their note), and Morrisett Bros., acting by and through said S.W. *Page 202 
Morrisett, on 4 October, 1905, with the funds so furnished by plaintiff, under the understanding and agreement aforesaid, paid the Scotland Neck Bank the amount of the note and mortgage, and, at the time of payment the Scotland Neck Bank, at the request of S.W. Morrisett, transferred directly to S.W. Morrisett the note and mortgage, indorsing on each the following:
Transferred to S.W. Morrisett without recourse.
SCOTLAND NECK BANK,
4 October, 1905. W. R. BOND, Asst. Cashier.
5. At the time of the payment for and transfer of the note and mortgage aforesaid, the Scotland Neck Bank had no notice of the understanding and agreement between plaintiff and Morrisett Bros. or S.W. Morrisett, and did not know from whom or how Morrisett Bros. obtained the funds with which the payment was made.
6. In making the payment and having the note and mortgage transferred to S.W. Morrisett, as aforesaid, it was the purpose and intention of Morrisett Bros. and S.W. Morrisett that plaintiff was to be the holder and owner of said note and mortgage, but, not desiring the Scotland Neck Bank to know from whom they obtained the money or of their dealings with the plaintiff bank, and being ignorant of any (241) legal effect such transfer might have, had the transfer made directly to S.W. Morrisett, as aforesaid.
7. In furtherance of said intention and purpose, and in order to comply with the understanding between Morrisett Bros. and plaintiff, S.W. Morrisett, on the following day, 5 October, 1905, transferred and delivered to the plaintiff the note and mortgage as collateral security for the note of Morrisett Bros., which they executed for the funds furnished by plaintiff, said note being given on that date for $2,500 ($1,500 of which was for the money furnished by plaintiff to take up the note and mortgage held by the Scotland Neck Bank), the note since then having been renewed from time to time, the last renewal being dated 1 May, 1908.
8. There is now due on the $2,500 note the sum of $1,500 and interest, $1,000 having been paid on same; and said note, as well as the note and mortgage purchased from the Scotland Neck Bank, is long past due.
9. Some time after the execution of said notes and the payment and transfer of the note and mortgage, as hereinbefore set out, to wit, on 19 December, 1908, Morrisett Bros. duly executed to defendant F. P. Shields a deed of assignment for the benefit of creditors (without preference), which was duly recorded, and in which was conveyed, with *Page 203 
other property, the real estate in Scotland Neck, N.C. which was conveyed in the mortgage by S.W. Morrisett to the Scotland Neck Bank.
10. That prior to the date of the deed of assignment, as well as afterwards, plaintiff has demanded of Morriset Bros. payment of their note, which has been refused.
11. Plaintiff has demanded of the Scotland Neck Bank that it foreclose the mortgage executed to it by S.W. Morrisett and wife, by selling the real estate therein conveyed, under the terms and provisions of the same, to satisfy the note of Morrisett Bros. secured by it, but said bank has refused and still refuses to do so. The said mortgage has not been canceled on the record.
12. Defendants contend that the transaction in regard to the (242) note and mortgage, and the transfer of the same to S.W. Morrisett by Scotland Neck Bank, as set forth in the foregoing statement of facts, was in law a payment of the note and a cancellation of the mortgage as to F. P. Shields, assignee under said deed of assignment, and as to him and the creditors of Morrisett Bros. the mortgage is not in force, while plaintiff contends that such payment and transfer of the note and mortgage did not have that effect and that the mortgage is still in force as against Shields, assignee, and all others, at least in equity, and is a subsisting security for the debt of Morrisett Bros. to it.
13. It is agreed that if the court shall be of the opinion that the payment of the said note and mortgage and transfer of the same by the Scotland Neck Bank to said S.W. Morrisett, as set out in the foregoing statement of facts, was not, as to defendant, F. P. Shields, assignee or grantee under the deed of assignment, a payment of the note and cancellation of this mortgage, and that said mortgage is in force as against Shields, as assignee, judgment shall be entered requiring the defendant Scotland Neck Bank to foreclose the mortgage according to the provisions and terms thereof, for the benefit of the plaintiff bank.
14. It is further agreed that the costs of the action be divided equally between plaintiff and defendant F. P. Shields, assignee.
The note for $2,500 given by Morrisett Bros. to the plaintiff refers to the other note and mortgage for $1,500, purchased from the Scotland Neck Bank as collateral security for its payment, and it is described therein as having been indorsed by S.W. Morrisett to the plaintiff for that purpose, and the note for $1,500 to the Scotland Neck Bank, secured by the mortgage, is indorsed as follows:
Transferred to Commercial and Farmers Bank (the plaintiff) as collateral. S.W. MORRISETT.
The court rendered the following judgment: *Page 204 
This cause coming on to be heard, and being heard and fully considered upon the facts agreed, the court is of the opinion that S.W. (243) Morrisett, at the time he paid the money to the Scotland Neck Bank and took the assignment of said note and mortgage, was not the holder of the same in his own right or in the right of Morrisett Bros., but in the right of the Commercial and Farmers Bank, as trustee for said bank, and therefore it is ordered and adjudged that said note and mortgage was not discharged, but is in full force and effect; and it is thereupon ordered and adjudged that the Scotland Neck Bank foreclose said mortgage according to the provisions and terms thereof. It is further ordered that the plaintiff and the defendant F. P. Shields, assignee, each pay one-half of the cost.
G.S. FERGUSON, Judge.
Defendant F. P. Shields, assignee, excepted and appealed.
After stating the case: The plaintiff's claim appeals very strongly to the conscience of the Court, and we think it is sustained by well-settled principles. The doctrine of subrogation rests upon principles of natural justice and equity, and there are numerous authorities which support the rule that one who, at the request of another, advances money to pay off a security or encumbrance, in which the latter is interested or to the discharge of which he is bound, under the agreement that he shall have the benefit of the creditor's security, is entitled to be subrogated to the rights of the creditor in the security; and some cases hold that, in the absence of an express agreement, one will be implied that the security shall subsist for the use and benefit of the lender of the money, and it will be so enforced. Gans v. Thieme,93 N. Y., 225; Levy v. Martin, 48 Wis. 198; Wilkins v. Gibson, 113 Ga. 31. One who pays a debt at the instance of the debtor, under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may, as against the debtor and the debtor's estate, be subrogated to the benefit of such security and of the debt which he has discharged. And a party who has paid a debt at the request of the debtor, under circumstances which would operate (244) a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by this payment, may also be subrogated to the security, as against the debtor. But this subrogation will not be allowed against one interested in the *Page 205 
property held as security, who was a stranger to the transaction by which the payment was made and who was under no obligation for the payment of the debt, unless it appears that the payment was made, not as an extinguishment of the debt, but in reliance upon and as a purchase of the security. This is a species of conventional subrogation, being a subrogation by an implied convention or agreement. Accordingly, it will not be allowed if it appears not to have been intended by the parties, though this intention, if not expressed, may ordinarily be determined from the circumstances attending the transaction. Sheldon on Subrogation, sec. 274.
The authorities are entirely agreed, though, that where a person advances money to pay off a mortgage debt under an agreement with the owner of the equity of redemption or his representative that he shall hold the mortgage as security for his advance, but the mortgage, instead of being assigned to him, is discharged in whole or in part, he is yet entitled as against subsequent parties in interest to be subrogated to the rights of the mortgagee and to enforce the mortgage. Sheldon on subrogation, sec. 19; 37 Cyc., 467, 471; Crippen v. Chappel, 35 Kansas, 495; Fivel v.Zuber, 67 Tex. 275[67 Tex. 275]. In the case last mentioned it is said that no different rule has been found except in Louisiana, where the law of the subject is governed by statute.
Numerous authorities are cited in support of the rule, and the following passage from Domat, in which the principle is clearly and strongly stated, is quoted with approval: "One may acquire the privilege of a creditor without substitution in the same manner as a mortgagee, by agreement with the debtor that he who shall pay for him shall have the privilege; and it makes no difference whether the payment be made to the creditor by him who lends the money or by the debtor with whom the money has been intrusted." (2 Strahan's Domat's Civil Law, Cushing's Ed., p. 698, sec. 1783.)
The subject is fully discussed in 1 Jones on Mortgages (6 Ed.), (245) sec. 872 et seq., and all the authorities collected. It is there said that the principle is well settled that when the money is advanced, at the request of the debtor or creditor, with the agreement that an assignment should be made or that subrogation should take place, or, what is the same thing in law, that the lender should have the benefit of the security, in either of the cases it will be kept on foot for the repayment of the amount advanced by the lender; and there seems to be no ruling to the contrary.
Downer v. Miller, 15 Wis. 612, seems to be exactly like this case in all respects. It decides every point raised in favor of the plaintiff, viz., that there clearly exists the right of conventional subrogation, that the *Page 206 
express assent of the creditor, who received the money from the party claiming the right, is not necessary, and that the assignee takes subject to plaintiff's equity. Lyness was the creditor, Steever the debtor, and Miller the one who advanced the money and claimed the right of subrogation. The Court said: "Miller's rights, therefore, must depend entirely on the effect of the agreement between him and Steever, and that we deem sufficient to justify the judgment of the Circuit Court. That agreement was that Miller was to indorse for Steever so as to enable the latter to raise the money at the bank, but that the money was to be used, not to pay and extinguish the Lyness judgment, but to procure an assignment of it to Miller, to indemnify him as the indorser. To use the money thus obtained to pay the judgment and have it discharged would operate as a fraud upon Miller, and it is upon this ground that he was entitled to the relief given by the court below. It may be conceded that such relief could not have been given against any party who, relying upon the discharge of the Lyness judgment, has acquired an interest in the property for a valuable consideration, without notice of Miller's equitable rights. But the appellant here does not stand in such a position. His rights were subsequent and subject to the Lyness mortgage. . . . Nor is the fact that Lyness was not party to the agreement that his decree should be assigned for Miller's security, any reason why that agreement should not be enforced. It was a matter of indifference to him whether the decree was assigned or discharged, and (246) where justice between others requires it to be assigned, he should not be allowed to prevent it upon the supposed technical right to control his own decree. The enforcement of this agreement between Miller and Steever without reference to the question whether Lyness assented to it is entirely analogous to the principle of subrogation, where the assent or agreement of the creditor who gets the money is not essential to the right. If a surety pays a debt, he has a right to be subrogated to the securities of the creditor, and the latter would not be allowed to object, for it is a matter of indifference to him. It is equally true here, though Miller's right is not (strictly) that of subrogation, but grows out of the agreement between him and Steever. That agreement is one which should have been enforced even though Lyness had adhered to his refusal to assign the decree. But here he voluntarily consented in the end to make the assignment." Shreve v. Hankinson, 34 N.J. Eq., 76; 1 Pingrey on Mortgages, sec. 1175. "Where the amount due on mortgages is paid by a third person at the request of the mortgagor, and there is no understanding that they shall be considered satisfied, a court of equity will, for purposes of justice, keep the mortgages alive, and much more so if the party takes an assignment of the mortgages." Tolman v. *Page 207 Smith, 85 Cal. 280; Gans v. Thieme, 93 N.Y. 232; Yabie v. Stephens,36 Kan. 680; Bacon v. Goodnow, 59 N. H., 415.
The case of Gans v. Thieme is a very strong authority for the position that under the facts of this case, the plaintiff, who, at the request of Morrisett Bros., advanced the money to pay the debt owing to the defendant bank, is entitled to be subrogated to the rights of the latter in the debt and mortgage, as will appear from the following extract: "It is no doubt true, however, as the learned counsel for the respondents argues, that a volunteer cannot acquire either an equitable lien or the right to subrogation; Sandford v. McLean, 3 Paige, 122; Wilkes v.Harper, 1 N.Y. 586; 2 Barb. Ch., 338; but one who, at the request of another, advances his money to redeem or even pay off a security in which that other has an interest, or to the discharge of which he is bound, is not of that character, and in the absence of an express agreement one would be implied, if necessary, that it shall subsist (247) for his use, and it will be so enforced. But the doctrine of substitution may be applied although there is no contract, express or implied. It is said to rest `on the basis of mere equity and benevolence';Cheeseborough v. Millard, 1 Johns. Ch., 409; 1 Story's Equity Jurisprudence, sec. 943, and is resorted to for the purpose of doing justice between the parties."
Why should this not be the true doctrine, when the money is paid at the request of the debtor, with the agreement that the security should continue for the benefit of him who advanced the money? The creditor is not prejudiced in any way or to any extent. The debtor has made the promise and has derived a clear benefit by the payment to his creditor, and in a court of equity he will not be heard to say that the arrangement has failed by reason of the fact that he violated his instructions or agreement, if he did, and took an assignment to himself instead of the plaintiff. The mortgage has not been canceled, and even if it had been, a court of equity would not regard the cancellation as in the way of enforcing the undoubted right of the plaintiff to relief, provided there has intervened no new right acquired for value and without notice, which will be prejudiced if the lien is enforced. The law will not allow the debtor to avail himself of the breach of trust and thereby defeat the right created by his agreement, upon the faith of which the money was advanced, but will regard the assignment as made for the benefit of him to whom it justly belonged, as we have already shown. Dudley v. Bergen, 23 N.J. Eq., 397; Russell v. Mixer,42 Cal. 475; Cobb v. Dyer, 69 Me. 494; Seiberling v. Tipton,113 Mo., 373; Brace v. Bonney, 78 Mass. (12 Gray), 107. In Russell v.Mixer, supra, it is said: "The only question presented is, whether or not, upon the facts stated in the *Page 208 
amended complaint, the plaintiff is entitled to the relief he obtained. We think that there can be no doubt that he is. The agreement between Miller and himself was for an assignment and transfer of the mortgage; the mistake occurred wholly in the selection of the means by which this agreement was to be effectuated. There is no appreciable distinction between this case and that where a scrivener, through ignorance or (248) inattention, fails to select or prepare such an instrument as effectuates the previous agreement of parties, and relief is always decreed in that case. 1 Story Eq. Jur., sec. 115. Had the recorder here, upon being informed by the parties that the agreement between them was that the mortgage in question should be more effectually transferred to Russell, prepared a release, instead of an assignment, whether he did so through mere inattention to what he was doing, or through a misapprehension of its legal effect in the premises, there would be no doubt that equity would relieve against the mistake. The rule must be the same in a case where the parties have made the mistake for themselves, and without the aid of either scrivener or recorder."
But in Moring v. Privott, 146 N.C. 558, we find an authority which clearly sustains the plaintiff's right of subrogation. It is there said that subrogation is of equitable origin, not dependent upon contract, and is always invoked to prevent injustice. It is defined to be the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt, . . . or that change by which another person is put into the place of a creditor, so that the rights and securities of the creditor pass to the person who, by being subrogated to him, enters into his right. It is a legal fiction, by force of which an obligation extinguished by a payment by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the rights, remedies, and securities of another. The party who is subrogated is regarded as entitled to the same rights, and, indeed, as constituting one and the same person with the creditor whom he succeeds. Sheldon Sub., 2; 27 Am. Eng. Enc., 206; Davidson v. Gregory, 132 N.C. 389;Carter v. Jones, 40 N.C. 196; Springs v. Harven, 56 N.C. 96.
But the Court, quoting from and approving Robinson v. Leavitt,7 N. H., 99, further said: "There are cases in which a party who has paid money due upon a mortgage is entitled, for the purpose of effecting the substantial justice of the case, to be substituted in the place of the encumbrancer and treated as assignee of the mortgage, and is (249) enabled to hold the land as assignee, notwithstanding the mortgage itself has been canceled and the debt discharged. The true principle is that when money due upon a mortgage is paid it shall *Page 209 
operate as a discharge of the mortgage or in the nature of an assignment of it, as may best serve the purpose of justice and the just intent of the parties. Many cases state the rule in equity to be that the encumbrance shall be kept on foot or considered extinguished or merged, according to the intent or interest of the party paying the money. . . . And it makes no difference whether the party, on payment of the money, took an assignment of the mortgage or a release, or whether a discharge was made and the evidence of the debt canceled. The debt itself may still be held to subsist in him who paid the money, as assignee, so far as it ought to subsist, in the nature of a lien upon the land, and the mortgage be considered in force for his benefit, so far as he ought in justice to hold the land under it, as if it had been actually assigned to him." There are numerous authorities of like tenor.
Our recent decision in Tripp v. Harris, 154 N.C. 296, is directly in point. We there held that where the note secured by a mortgage is paid by a surety thereon, the note is satisfied, but an implied promise of the principal to reimburse the surety at once arises, and that he is subrogated to the rights of the creditor in all securities held by him, and he may, with or without any formal assignment, avail himself thereof for the purpose of indemnifying himself, and if the security be a mortgage, he may foreclose the same for his own benefit as a creditor of the principal.
Our case presents a much stronger equity in favor of the plaintiff, as there the mortgage was not canceled on the record or otherwise; there was an express agreement for subrogation; Morrisett received the note as agent for the plaintiff and had no authority in law or in fact to take an assignment to himself, and the next day he actually delivered note and mortgage, which he had received from the creditor, in execution of the agreement, to the plaintiff. The conduct of Morrisett shows conclusively that he did not take the assignment to himself for his own benefit and with the purpose of satisfying the debt and canceling the note, but for the use and benefit of the plaintiff bank, in accordance with the agreement between them, because he almost immediately (250) transferred and delivered the note and mortgage to it. In Liles v. Rogers, 113 N.C. 197, this Court recognized the doctrine of conventional subrogation, and it is there said that where the money is paid to the creditor by another, at the request of the debtor, to discharge his obligation, the person who advanced the money is, in equity, subrogated to the rights of the creditor in the securities held by him.
We do not understand that the Morrisetts or the defendant bank are contesting the right of the plaintiff, the appeal having been taken by the assignee of the Morrisetts, and he stands in no better position than *Page 210 
his assignors would have held if the general assignment had not been made by them. "It may be said generally that an assignee succeeds only to the rights of his assignor and is affected by all equities against him, and takes the property subject to all such equities." JusticeShepherd thus states the rule in Wallace v. Cohen, 111 N.C. 104: "It is true, as laid down in Southerland v. Fremont, 107 N.C. 565, that such a trustee or mortgagee is a purchaser for value within the Statutes of 13 and 27 Elizabeth, but it is, in that case, conclusively determined, after some confusion in our decisions, that such a purchaser takes the property subject to any equity or other right that attached to the same in the hands of the debtor. This view is abundantly sustained, not only by our own previous decisions, but by the great weight of judicial authority.Bassett v. Norsworthy, White Tudor's L. C. Eq., and notes. As applicable to the present case, the doctrine has been recognized and applied in a large number of decisions. `In order to entitle one to protection as a bona fide purchaser in such a case, he must have advanced some new consideration, or incurred some new liability, on the faith of the fraudulent vendee's apparent ownership.' Johnson v. Peck, 1 Woodb. M., 334; McLeod v. Bank, 42 Miss. 99; Hyde v. Ellery,18 Md. 496; Sargent v. Sturm, 23 Cal. 359; Ratcliffe v. Sangston,18 Md. 383; Pope v. Pope, 40 Miss. 516. Hence, `an assignee of the fraudulent vendee for the benefit of creditors, incurring no new liability on the faith of his title, is not protected.' Farley v. Lincoln, 51 N. H., 577; Harris v. Horner, 30 Am. Dec., 182; Stevens v. Brennan, (251) 79 N.Y. 254; Montgomery v. Bucyrus, 92 U.S. 257; Donaldson v. Farmer, 93 U.S. 361. These authorities with very many others we could cite, are directly in point, and sustain the right of the plaintiffs to recover without fixing the assignee with notice." This has always been the settled law in this State, and certainly since Potts v.Blackwell, 56 N.C. 449, was decided. This doctrine is so well established that it requires no further discussion. Besides, the record of an uncanceled mortgage upon real estate charges subsequent purchasers with notice of the encumbrance. Smith v. Stark, 3 Col., 453.
The court was right in giving judgment for the plaintiff, upon the case agreed.
Affirmed. *Page 211